THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
DOMINICK MASCHI, Appellant.

First Department, December 21, 1978

**APPEARANCES OF COUNSEL**

*E. Thomas Boyle* of counsel for appellant.

*Meredith Anne Feinman* of counsel *(Jerrold L. Neugarten* with her on the brief; *Robert M. Morgenthau, District Attorney),* for respondent.

## OPINION OF THE COURT

FEIN, J.

Dominick Maschi appeals from a judgment convicting him, upon a jury trial, of burglary in the third degree and sentencing him as a predicate felon to a term of 2 to 4 years. Defendant was apprehended at about 5:00 A.M. on May 18, 1976 after entering an antique shop at 440 East 75th Street. According to the arresting officer, defendant was seen hunched over inside the shop and was ordered by the officers to come out. Maschi related to the officers that he observed that the door window of the shop had been broken and the door was open and he entered to look inside out of curiosity. He denied having been ordered to leave the shop by the officers. He claimed he was apprehended as he was leaving voluntarily.

Defendant testified that he had been drinking at an after hours club with his friend Peter Pappadakos and immediately prior to the arrest he and Pappadakos were walking to the latter's home. When they approached the antique shop, they observed that the window in the front door was broken and the door was slightly open. He entered to see what was happening. He remained in the shop for less than two minutes and was arrested as he was leaving the store. Pappadakos testified essentially to the same effect, confirming defendant's account that the window of the door was broken and the door was partly open. Pappadakos, however, did not follow defendant into the shop, but rather continued to walk. After walking a short distance, he started to return to the shop to persuade defendant to leave. By that time the police had arrived. Pappadakos testified that he watched from a distance as the police officers handcuffed defendant and placed him under arrest. During cross-examination, the prosecutor at some length inquired of Pappadakos as to why he, knowing his friend Maschi had been arrested, never told police or the District Attorney that the shop door window was broken and the door open when Maschi entered.

On appeal, defendant assigns as error this extended cross-examination by the prosecutor as unfairly implying that Pappadakos had a duty to come forward with the exculpatory

account related at trial. Defendant further contends that the error was compounded by the heavy emphasis in the prosecutor's summation on Pappadakos' failure to report what he knew either to the police or the District Attorney.

■ The cross-examination and summation by the prosecutor in this respect impinged upon defendant's right to a fair trial. The testimony of Pappadakos confirmed Maschi's explanation of the circumstances of his entry into the store. Although such explanation might have been consistent with criminal trespass it tended to negate the charge of burglary. The cross-examination and summation by the prosecutor as to why the witness failed to report the incident and his observations to the police or to the District Attorney did more than merely suggest to the jury that the testimony of the witness was fabricated. The clear purpose of the inquiry was to indicate that there was a duty on the part of Pappadakos to inform either the police or the District Attorney of facts consistent with defendant's innocence. In this respect, the cross-examination was unfair and improper. *(People v Milano,* 59 AD2d 852; *People v Smoot,* 59 AD2d 898; *People v Hamlin,* 58 AD2d 631.)

Although we have held that the failure of an alibi witness to disclose the alibi until trial is a factor which may be brought before the jury on the issue of credibility *(People v Brown,* 62 AD2d 715, 720), here the prosecutor sought to imply a duty on the part of an eyewitness to the event to report exculpatory information to the police. No authority appears obligating an eyewitness to disclose exculpatory information. We do not deal here with the duty to report evidence of crime. Moreover the prosecutor did much more than merely suggest to the jury that the delay in disclosure by the eyewitness was to be considered only in assessing the credibility of the witness. The prosecutor posited a duty of disclosure which had been breached.

Thus this case is more nearly akin to this court's holding in *People v Milano* (59 AD2d 852, *supra)* than to *People v Brown* (62 AD2d 715, *supra)* relied upon by the prosecution. As stated in *Milano (supra,* p 853): "In our opinion the defendant was denied a fair trial by the prosecutor's improper cross-examination of an alibi witness and, in particular, by his persistent improper efforts to discredit such witness, the clear purport of which was to implant in the jurors' minds the proposition that the witness was unworthy of belief because he had failed to promptly divulge the subject matter of his alibi testimony to

the appropriate law enforcement authorities. The defendant's father, who had been a police officer, testified as an alibi witness for his son. The prosecutor, on cross-examination of this witness, inquired into his reactions to prior arrests of his son and then, over objections which were sustained by the court, he attempted to suggest that, had the witness revealed his son's alibi at the time of the arrest, the charges against defendant would have been dropped." That this is precisely the vice here is plain from the cross-examination of Pappadakos.

"Q. May I ask you a question: when was the first time you ever told anyone that the store window had been broken?

"A. When I saw it.

"Q. Who did you tell?

"A. Mikey.

"Q. And after that incident, did you find out that Mr. Maschi had been arrested?

"A. Yes.

"Q. Did you find out that he had gone to the Police Station?

"A. Yes.

"Q. Who told you that?

"A. Mikey. He didn't tell me. I known police procedure. You're arrested, you go to the station.

"Q. You found out he went to court?

"A. Yes.

"Q. Did you go to court that morning?

"A. No.

"Q. Did you ever go talk to Police Officer Sullivan?

"A. I don't like police.

"Q. Did you ever talk to Police Officer Brevner about this case?

"A. I never heard the names.

"A. How about any officers in the 19th Precinct? Did you ever walk to the 19th Precinct and tell the Police what you saw?

"A. No.

"Q. Did you ever go to the DA's office and come and see me and tell me what you had seen?

"A. I didn't want to come today.

"Q. You didn't want to come today?

"A. No.

"Q. You know him for eight years, right?

"A. Yes.

"Q. And you weren't interested enough?

"A. I don't need aggravation. I got my own problems. I didn't want to come today.

"Q. When did you find out that you were going to be a witness today, sir?

"A. About ten days ago, two weeks ago. He came by the store, him and his attorney.

"Q. Who came by the store?

"A. Mikey and Mr. Alfano.

"Q. And they asked if you would be a witness?

"A. And he said if you don't we'll subpoena you.

"Q. Did they ever subpoena you?

"A. No.

"Q. So you came here of your own volition?

"A. Yes.

"Q. During the last ten months, while this case was pending, you never told anyone concerned with law enforcement, anyone in the DA's Office, you had information that would clear Mr. Maschi of this charge of burglary?

"MR. ALFANO: Objection, you Honor.

"THE COURT: Overruled.

"A. I never told anybody. I didn't even know what he was going to be charged with."

Moreover in *People v Brown* (62 AD2d 715, *supra)* as this court noted, there was no objection by defense counsel, unlike *People v Milano* (59 AD2d 852, *supra)* and our case where objections to the crucial questions were overruled. As noted, *Brown (supra),* dealt with alibi witnesses, whereas our case involves an eyewitness. We need not here attempt to reconcile the apparent conflict in the cases with respect to the right to cross-examine alibi witnesses as to the reasons for their belated disclosure. (Cf. *People v Brown, supra; People v Milano, supra,* both First Department cases, and *People v Smoot,* 59 AD2d 898, *supra; People v Hamlin,* 58 AD2d 631, *supra,* both Second Department cases.) The dissent in *Hamlin,* noted with approval in *Brown (supra,* p 722), suggests that the notice of alibi statute (CPL 250.20, subd 1) implies that an alibi witness

has a duty to make prompt disclosure upon becoming aware of an impending prosecution. There is no such basis for finding or creating a duty of an eyewitness to disclose exculpatory information. Nonetheless, the cross-examination and summation by the prosecutor were plainly premised upon the existence of such a duty and its breach by Pappadakos. This is demonstrated by the summation: "Pete, honorable Pete. Upstanding member of the community. A man who hates cops. Why does he hate cops. Because they arrested his friend Maschi. His friend Maschi sleeps in his house on occasion. They drink together. They buy drinks for one another. One for all and all for one except when you [sic] friend is in trouble you run. You stand on a street conner [sic] and you watch. Make sure nobody sees you so you don't like cops, understandable. You don't go to the precinct, you don't go to the Grand Jury and testify, speak to the DA, officers and say listen, the guy I just saw him. He didn't go in. He didn't break anything. Never comes up. The first time he shows up is yesterday out of the blue. You take his testimony for what it is worth."

The prosecutor was telling the jury that Maschi was guilty because Pappadakos failed promptly to tell the police that he and Maschi, who had been drinking together in an after hours club for some hours, had walked past the store at 4:30 A.M. and observed the broken window and slightly opened door and that Maschi had entered the store against the advice of Pappadakos who walked on in order to avoid trouble and that Pappadakos was returning towards the store to persuade Maschi to leave when the police apprehended Maschi. Pappadakos had no duty to make such disclosure in whole or in part. As in *Hamlin* (58 AD2d 631, *supra)* and *Milano* (59 AD2d 852, *supra)* defendant was denied a fair trial because the cross-examination and summation inferred defendant's guilt from the failure of Pappadakos immediately to relate the exculpatory account to either the police or the District Attorney.

■ There was also error in the cross-examination of defendant Maschi with respect to the events surrounding and following his prior conviction for possession of a weapon as a felony. Assuming the court correctly ruled that he could be cross-examined with respect to such conviction as bearing on his credibility *(People v Duffy,* 36 NY2d 258; *People v Sandoval,* 34 NY2d 371; *People v Schwartzman,* 24 NY2d 241; *People v Sorge,* 301 NY 198), there was no warrant whatever for the

cross-examination relating to his arrest *(People v Morrison,* 195 NY 116) for resisting arrest nor for the inquiry as to the condition of his probation, that he was supposed to get some type of employment "outside the family business", or, as he put it, "Something that I wasn't allowed actually to be around my mother." Patently these were matters having nothing to do with the subject crime nor with credibility. The prejudice is manifest.

A "defendant who chooses to testify may be cross-examined concerning any immoral, vicious or criminal acts of his life which have a bearing on his credibility as a witness, provided the cross-examiner questions in good faith and upon a reasonable basis in fact". *(People v Duffy,* 36 NY2d 258, 262, *supra; People v Sandoval,* 34 NY2d 371, *supra; People v Sorge,* 301 NY 198, *supra.)* Tested by this standard the inquiry concerning the conditions of probation imposed on the prior conviction was unfair. There was not even an attempt at a good faith showing that such conditions demonstrated defendant was guilty of any immoral, vicious or criminal acts other than the weapons charge of which he had admittedly been convicted. Nor was it even suggested in what manner the conditions of probation had any bearing whatever on his credibility as a witness. The inquiry was patently unfair and prejudicial. The cross-examination is replete with references to the prior crime, its circumstances, the pedigree statement given at the time of the prior conviction and the conditions of probation, some over objection and some without objection. The tenor of the cross-examination is well indicated by the prosecutor's inquiry in response to defendant's denial he had resisted arrest although so charged in connection with the prior weapons arrest: "Q. The officer just threw those charges in?"

The cross-examination far exceeded the permissible limits. Nor were the errors cured by the court's limited instructions that such evidence was received only in connection with "appraising credibility or believability."

■■ Defendant was denied his fundamental right to a fair trial. Without basis, the prosecutor discredited the testimony of the eyewitness Pappadakos by reason of Pappadakos' violation of a nonexistent duty previously to divulge to law enforcement authorities the exculpatory information which he possessed. The prosecutor's cross-examination of defendant with respect to the circumstances of his prior arrest and his conviction and its consequences, including the conditions of his

probation, went far beyond the only proper purpose of such an inquiry, impeachment of his credibility.

These violations of defendant's rights were too substantial to be described as "harmless." "The right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right." *(People v Crimmins,* 36 NY2d 230, 238.)

Accordingly, the judgment of Supreme Court, New York County (GORMAN, J.), rendered June 6, 1977, should be reversed, on the law, and the case remanded for a new trial.

SILVERMAN, J. (dissenting). I would affirm the judgment appealed from.

The majority says that the prosecution's cross-examination of the defense witness Pappadakos was premised on an implication that the witness had a duty to come forward and volunteer to the police and the prosecution his exculpatory version of the facts. Passing the question of whether this would constitute error (cf. *People v Brown,* 62 AD2d 715), I do not think that was the premise of the cross-examination. Nowhere in the cross-examination is there any use of the word duty or any statement to that effect. The basic premise of this line of cross-examination was not a presumed duty to come forward but rather that on the facts of this case the natural thing for the witness to do would be to point out to the police and the prosecution that there was a misapprehension, and that his failure to do this natural thing was sufficiently out of harmony with the witness' version of the facts as to cast doubt on the credibility of the witness' story and thus form a permissible subject for exploration on cross-examination and comment in summation.

The witness testified that at about 5:00 A.M. after he and defendant had been drinking together for about an hour, they walked past an antique store and noticed that the front door was broken and ajar; that defendant went inside to explore; that the witness went on about 100 feet and then turned back to encourage defendant to leave; that he saw the police car and saw defendant brought out by the police and handcuffed. As defendant was his friend, and as the witness knew that the police were arresting his friend under an obvious misapprehension, it would be quite natural for the witness, on the scene, to say to the officers that they were making a mistake. His failure to do so, then or later, despite the obvious motiva-

tion to help a friend, casts doubt on the truthfulness of his story and is thus a proper subject of cross-examination. That this, rather than a supposed duty, is the premise of this line of cross-examination, clearly appears from the prosecution's statement on summation: "His friend Maschi sleeps in his house on occasion. They drink together. They buy drinks for one another. One for all and all for one except when your friend is in trouble you run. You stand on a street corner and you watch. Make sure nobody sees you so you don't like cops, understandable. You don't go to the precinct, you don't go to the Grand Jury and testify, speak to the DA, officers and say listen, the guy I just saw him. He didn't go in. He didn't break anything."

Of course there may be reasons why the witness might not have spoken up even at the risk that his innocent friend would go to prison. But surely those reasons are not so inevitable as to preclude cross-examination. The witness' conduct and the reasons for it are thus a proper subject for the jury to consider in assaying the witness' credibility.

As the defense was essentially lack of criminal intent, certain of the other items of cross-examination claimed to be improper were admissible to show intent particularly under the intent exception of *People v Molineux* (168 NY 264, 297).

The other claims of improper cross-examination to the rather limited extent that they are improper and not corrected by the Judge's instructions, do not, in my judgment, remove the case from the rule stated in *People v Crimmins* (36 NY2d 230, 242) that convictions shall not be reversed unless "there is a significant probability * * * that the jury would have acquitted the defendant had it not been for the error or errors which occurred."

The proof of guilt is overwhelming. There can hardly be stronger evidence of burglary than to find a defendant, at 5:00 o'clock in the morning, in a store where he does not belong, with the door broken and ajar, and with articles, which had been in the display window when the store closed, now in a shopping bag. The defense that he just happened to wander in to explore is the same threadbare defense frequently urged by burglars caught *in flagrante,* and that generations of juries and Judges have found unpersuasive.

MURPHY, P. J., MARKEWICH and SANDLER, JJ., concur with FEIN, J.; SILVERMAN, J., dissents in an opinion.

Judgment, Supreme Court, New York County, rendered on June 6, 1977, reversed, on the law, and the case remanded for a new trial.