### STATE of Maine

v.

### Robert CEFALO.

Supreme Judicial Court of Maine.

Jan. 12, 1979.

William P. Donahue, Dist. Atty., Joseph A. Wannemacher, Asst. Dist. Atty. (orally), Alfred, Roger P. Flaherty, Asst. Dist. Atty., Sanford, for plaintiff.

Kettle & Carter, P. A. by Burt Kettle (orally), Portland, for defendant.

Before McKUSICK, C. J., and POMER-OY, WERNICK, ARCHIBALD, DELA-HANTY and GODFREY, JJ.

McKUSICK, Chief Justice.

A York County jury found defendant Robert Cefalo guilty of rape under 17–A M.R.S.A. § 252 (Supp.1978). Defendant appeals from his conviction on grounds that (1) the presiding justice erred in admitting evidence of an out-of-court and an in-court identification of defendant by the prosecutrix, and (2) the evidence was insufficient to support the jury's verdict. Because we find that the admission of the highly probative identification evidence survives constitutional scrutiny, we deny the appeal.

At trial, the 20-year-old prosecutrix gave the following account of the rape. At approximately 1:00 a. m. on July 6, 1977, the prosecutrix returned after work to her cottage residence in Old Orchard Beach. Unable to gain entrance to her locked room, she remained standing on the screened-in porch of the cottage to await her roommate's return. The porch was lighted by a fixture in the center of the ceiling. A man dressed in a black poncho that stretched to his knees suddenly appeared on the sidewalk in front of the house and asked the prosecutrix if he could use her telephone to obtain help for a child who allegedly had been hurt nearby. The prosecutrix answered that she did not have a phone and suggested that the man try the house next door. A short time later, the same man returned wearing a mask and carrying a small firearm. He entered the porch, covered the prosecutrix's face with a black scarf, and then took her to the lawn of the house next door where he raped her. The rape lasted approximately twelve minutes.

The prosecutrix reported the incident to the police later that same morning. Based on the prosecutrix's description of her assailant, the police drew a composite sketch and left the drawing with the prosecutrix. The prosecutrix, an amateur artist, made

several alterations in the composite and returned it to the police. Approximately five weeks later, on August 16, 1977, the investigating officer showed the prosecutrix fifteen photographs of different men and asked her if any of the photographs fitted the rapist. The prosecutrix, selecting a photograph of defendant, said, "[T]his man look[s] a lot like the man who attacked me."

On October 30, 1977, the investigating officer showed the prosecutrix a single photograph and asked if the man portrayed was the rapist. The photograph was a classic front and profile "mug shot" of Cefalo. The prosecutrix examined the photograph and then made her first positive identification of defendant, stating, "That's the man." [1]

The Superior Court trial commenced on March 27, 1978. After conducting a suppression hearing pursuant to *State v. Boyd*, Me., 294 A.2d 459, 465–66 (1972), the presiding justice ruled that the prosecutrix would be allowed to identify defendant in her testimony before the jury. The presiding

justice also admitted evidence of the August 16, 1977 identification at trial.

### I. Admissibility of Identification Evidence

Defendant argues on appeal that the admission of evidence of the prosecutrix's out-of-court identification of defendant on August 16, 1977, and her in-court identification of defendant at trial violated his right to due process of law under the Constitutions of the United States (amend. XIV, § 1) and the State of Maine (art. I, § 6–A). Specifically, defendant maintains that (1) the August 16 photographic array was so unnecessarily suggestive as to create a substantial risk of misidentification and (2) the prosecutrix's in-court identification of defendant was tainted both by the August 16 confrontation and the single-person mug shot show-up of October 30, 1977.

*State v. St. Onge*, Me., 392 A.2d 47 (1978), sets forth the rule governing a trial judge's disposition of a challenge to the admission of identification evidence.[2] The

1. The prosecutrix made a positive identification of Cefalo at a probable cause hearing in Biddeford District Court on the following day. Since evidence of this identification was brought to the jury's attention by defendant, its admissibility is not here in issue.

2. The law governing the constitutionality of identification evidence in Maine has developed in response to a series of United States Supreme Court decisions over the past decade. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, decided June 12, 1967, indicated that an out-of-court identification of the defendant would be consistent with due process of law only if the state's use of a suggestive procedure was justified by exigent circumstances, such as the impracticability of holding an in-person lineup, while *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), decided nine months later, suggested that an in-court identification of the defendant would pass constitutional muster despite a pretrial identification procedure that was suggestive if the court found that the witness' in-court identification was nonetheless reliable. Accordingly, our cases applied the *Stovall* necessity rule to challenged out-of-court identifications and the *Simmons* reliability test to in-court identifications. *State v. Boyd*, Me., 294 A.2d 459 (1972); *State v. Levesque*, Me., 281 A.2d 570 (1971). *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401, decided in

1972, applied the *Simmons* test to test the constitutionality of out-of-court identifications but expressly noted that the pretrial showup under consideration had occurred prior to the Court's decision in *Stovall v. Denno, supra,* "when we [the Supreme Court] first gave notice that the suggestiveness of confrontation procedures was anything other than a matter to be argued to the jury." *Neil v. Biggers, supra* 409 U.S. at 199, 93 S.Ct. at 382. Accordingly, Maine, as well as a number of other jurisdictions [see *Brathwaite v. Manson*, 527 F.2d 363 (2d Cir. 1975), *rev'd*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)], applied the *Simmons* reliability test only to pre-*Stovall* out-of-court identifications and continued to apply the stricter *Stovall* necessity test to post-*Stovall* confrontations. *State v. Colby*, Me., 361 A.2d 256 (1976); *State v. Lapointe*, Me., 357 A.2d 882 (1976); *State v. Caplan*, Me., 353 A.2d 172 (1976); *State v. Rowe*, Me., 314 A.2d 407 (1974); *State v. Northup*, Me., 303 A.2d 1 (1973). Finally, in 1977, the Supreme Court held in *Manson v. Brathwaite, supra*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140, that the reliability test applies to post- as well as pre-*Stovall* confrontations. *Id.* at 114, 97 S.Ct. 2243. This ruling has been reflected in our most recent identification cases. *State v. St. Onge*, Me., 392 A.2d 47 (1978); *State v. Boucher*, Me., 376 A.2d 478 (1977).

presiding justice must hold an evidentiary hearing to determine (1) if the identification procedure employed by the State was unnecessarily suggestive and, if so, (2) whether the "corrupting effect" of the suggestive procedure is outweighed by the reliability of the identification as measured by the factors outlined in *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972),[3] and expounded upon by this court in *State v. Rowe,* Me., 314 A.2d 407, 417 (1974). *See Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In essence, upon finding that the state used an unnecessarily suggestive procedure, the trial judge must determine whether the witness' out-of-court or in-court identification of the defendant has a basis independent of the suggestive effect of the defective confrontation. Unless the identification of the defendant is based on the witness' independent recollection of the incident, the evidence must be excluded.

Despite the clarity of the general rule declared in our past cases, we have not previously expressly addressed two questions regarding its application. First, which party has the burden of proof on the issue of the admissibility of the identification evidence and by what quantum of proof? And, second, what is the Law

Court's standard of review of a determination by the trial court that a pretrial identification procedure is unnecessarily suggestive or that a witness' identification of a defendant has an independent basis?

### Burden of Proof

The applicable Supreme Court cases provide little guidance on the burden of proof issue. Although there is general agreement among the lower courts that the defendant, as the movant in a suppression hearing, must prove by a preponderance that the challenged pretrial identification procedure was "unnecessarily suggestive,"[4] the courts split on the question of which party bears the burden of proof on the critical issue of whether the witness' out-of-court or in-court identification reflected the witness' own recollection of the defendant or resulted from the impact of a suggestive pretrial confrontation.[5] A few jurisdictions require the defendant to establish both the suggestiveness of the procedure and the absence of an independent basis,[6] while the majority of state and federal courts place the burden squarely on the prosecution to show by clear and convincing evidence that a defective pretrial confrontation employed by the police did not lead to an unreliable identification of the defendant.[7]

---

**3.** In *Neil v. Biggers, supra,* the Court stated that the factors to be considered in determining the reliability of identification evidence include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.,* 409 U.S. at 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401.

**4.** *People v. Wolf,* 48 Ill.App.3d 736, 6 Ill.Dec. 720, 363 N.E.2d 402, 405 (1977), *cert. denied,* 435 U.S. 915, 98 S.Ct. 1468, 55 L.Ed.2d 506 (1978); *Commonwealth of Botelho,* 369 Mass. 860, 343 N.E.2d 876, 881 (1976); *State v. Sahlie,* S.D., 245 N.W.2d 476, 479 (1976). In Maryland, the defendant need only establish a prima facie case of suggestiveness. The burden then shifts to the state to prove by clear and convincing evidence that the procedure was *not* unnecessarily suggestive. *Green v. State,* 35 Md.App. 510, 371 A.2d 1112, 1120, *rev'd on other grounds,* 380 A.2d 43 (1977).

**5.** *See Sanchell v. Parratt,* 530 F.2d 286, 293–94 n. 5 (8th Cir. 1976). *Compare United States ex rel. Gonzalez v. Zelker,* 477 F.2d 797 (2d Cir.), *cert. denied,* 414 U.S. 924, 94 S.Ct. 254, 38 L.Ed.2d 158 (1973) with *Martin v. Indiana,* 521 F.2d 682, 686 (7th Cir. 1975), *cert. denied,* —— U.S. ——, 99 S.Ct. 265, 58 L.Ed.2d 248 (1978).

**6.** *United States ex rel. Gonzalez v. Zelker, supra,* 477 F.2d at 801; *United States v. Evans,* 484 F.2d 1178, 1184 (2d Cir. 1973); *People v. Freeman,* 60 Ill.App.3d 794, 17 Ill.Dec. 917, 377 N.E.2d 107, 113 (1978). *See* Pulaski, "*Neil v. Biggers*: The Supreme Court Dismantles the *Wade* Trilogy's Due Process Protection," 26 Stan.L.Rev. 1097, 1112 (1974).

**7.** In *Commonwealth v. Botelho, supra,* the Supreme Judicial Court of Massachusetts stated:
"[A]s to burdens, it is for the defendant to establish, apparently by a preponderance, that a given confrontation was unnecessarily suggestive. See *Commonwealth v. Fancy,* 349 Mass. 197, 202, 207 N.E.2d 276 (1965) (general rule that burden on motion to sup-

The split among the courts appears to reflect differing conceptions of the due process concerns underlying the recent Supreme Court decisions that address the problem of eyewitness identification. Courts placing the burden on the defendant emphasize the prime interest at stake as preventing the admission of unreliable identification testimony that may lead to the conviction of the innocent. *See United States ex rel. Kirby v. Sturges,* 510 F.2d 397 (7th Cir.), *cert. denied,* 421 U.S. 1016, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975). Since no due process right is violated unless a defective confrontation actually leads to the witness' misidentification of the defendant, the burden is on the defendant to show both the suggestive nature of the identification procedure and the absence of an independent basis for the witness' identification. On the other hand, courts placing the burden on the state emphasize an interest in having law enforcement agencies employ fair identification procedures that exist independently of the reliability of the particular identification. Since the use of a suggestive procedure is contrary to "governmental

fair play" [8] and creates a risk of misidentification that cannot be completely erased by a trial court's finding that the identification is nonetheless reliable, the burden shifts to the State to show that the defective procedure it employed did not expose the defendant to an unwarranted conviction. Having utilized an unfair means to establish the defendant's guilt, the State must show that the defendant was not harmed by its own transgression.

Our examination of the most recent Supreme Court case to address the problem of eyewitness identification, *Manson v. Brathwaite, supra,* reveals that both of these due process concerns underlie the extension of special protection to defendants subjected to suggestive pretrial confrontations. Although *Manson v. Brathwaite* leaves no doubt that "reliability is the linchpin in determining the admissibility of identification testimony," 432 U.S. at 114, 97 S.Ct. at 2253, the Court noted that the reliability test it adopted serves an important deterrence function: "The police will guard against unnecessarily suggestive procedures . . . for fear that their actions will

press evidence is on moving party); . . . . If the defendant sustains his burden, then, should the prosecution desire to offer identification testimony, it must assume the burden of establishing by 'clear and convincing evidence' that the proffered identification has a source independent of the suggestive confrontation." 369 Mass. at ——, 343 N.E.2d at 881.

*See also United States v. Gambrill,* 146 U.S. App.D.C. 72, 449 F.2d 1148, 1153 (1971); *United States ex rel. Whitmore v. Malcolm,* 476 F.2d 363, 365 n. 2 (2d Cir. 1973); *United States ex rel. Thomas v. New Jersey,* 472 F.2d 735, 739 (3rd Cir.), *cert. denied,* 414 U.S. 878, 94 S.Ct. 121, 38 L.Ed.2d 123 (1973); *Martin v. Indiana, supra,* 521 F.2d at 686; *Huguley v. People,* Colo., 577 P.2d 746, 747 (1978); *Carter v. State,* —— Fla.App. ——, 366 So.2d 54, 24 Cr.L.W. (BNA) 2114 (1978); *State v. Bash,* Iowa, 214 N.W.2d 219, 220 (1974); *Green v. State, supra,* 371 A.2d at 1120; *State v. Watts,* 296 Minn. 354, 208 N.W.2d 748, 751 (1973); *State v. Sahlie, supra,* 245 N.W.2d at 479. Many of the foregoing cases, in imposing upon the prosecution the burden of proof of reliability, have relied by analogy on *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), an identification case involving the defendant's Sixth Amendment right to counsel. *See, e. g., United States v. Gambrill, supra* at

1153; *United States ex rel. Thomas v. New Jersey, supra* at 739; *State v. Watts, supra,* 296 Minn. at 358 at 208 N.W.2d 751. For elaboration of the Sixth Amendment line of authority, see n. 10 below.

8. In *State v. Northup, supra,* the Law Court recognized that a prime reason for subjecting pretrial identification procedures to constitutional scrutiny is to assure that the State acts with "decency and fairness" in criminal proceedings:

"Centuries ago political philosophers in English-speaking countries determined that society as a whole is best served by requiring the government to comport to certain canons of decency and fairness which we in Maine have labeled '*governmental fair play*' (*State v. Munsey,* 152 Me. 198, 127 A.2d 79 (1956)), even toward those charged with having committed heinous offenses under circumstances revolting to decent people everywhere.

. . . . .

"It is for this reason we, as a review court, scrutinize with great care State action in a criminal proceeding to assure that the State's conduct has been fair in every case in which a defendant, by an appropriate manner, claims lack of fairness." (Emphasis in original) 303 A.2d at 2–3.

lead to the exclusion of identifications as unreliable." *Id.* at 112, 97 S.Ct. at 2252.

We believe that placing the burden on the State to prove that an unnecessarily suggestive identification procedure did not create a substantial risk of misidentification best expresses the balance the Supreme Court struck between the twin due process concerns. No identification will be excluded *solely* because the police employed an unnecessarily suggestive pretrial identification procedure. Reliability is the key to admissibility. However, if the police ignore the frequent warnings of this court [9] and continue to use defective confrontation procedures, the State will run the risk of being unable to establish independently the reliability of the identification. This approach assures that reliable and probative identifications will be admissible, while deterring the police from employing unfair procedures that violate norms of governmental fair play and create the risk of misidentification.[10]

■ Accordingly, we hold that once a defendant, as the movant in the suppression hearing required by *State v. Boyd, supra,* proves by a preponderance that a pretrial identification procedure was unnecessarily suggestive, the burden shifts to the State to show by clear and convincing evidence [11] that the corrupting effect of the suggestive

9. We have repeatedly condemned the type of single-person photographic showup which the police employed in this case on October 30, 1977. *State v. St. Onge, supra,* 392 A.2d at 50–51; *State v. Levesque, supra,* 281 A.2d at 576. *See Simmons v. United States, supra,* 390 U.S. at 383.

10. Our resolution of this question draws direct support from the burden-of-proof rule applied in the analogous Sixth Amendment cases, where attack on the admissibility of an identification is grounded on denial of the defendant's constitutional right to counsel. As the Supreme Court noted in *Manson v. Brathwaite,* 432 U.S. at 111–12, 97 S.Ct. at 2251:

"The driving force behind *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) [right to counsel at a post-indictment lineup], and *Stovall* [388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199], all decided on the same day, was the Court's concern with the problems of eyewitness identification. Usually the witness must testify about an encounter with a total stranger under circumstances of emergency or emotional stress. The witness' recollection of the stranger can be distorted easily by the circumstances or by later actions of the police. Thus, *Wade* and its companion cases reflect the concern that the jury not hear eyewitness testimony unless that evidence has aspects of reliability."

*Wade, Gilbert,* and *Stovall* attacked the problem of suggestive pretrial confrontations in two different ways. *Stovall* stressed the existence of a blanket due process guarantee that protected the defendant from all suggestive pretrial confrontations, while *Wade* and *Gilbert* extended the defendant's Sixth Amendment right to counsel to post-indictment pretrial lineups, partly on the theory that "presence of counsel [at the pretrial lineup] itself can often avert prejudice and assure a meaningful confrontation at trial . . . ." *United States v. Wade, supra,* 388 U.S. at 236, 87 S.Ct. 1926, 1937. While the Court has not directly addressed the question of burden of proof in Fifth Amendment cases, the Court has clearly stated that denial of defendant's Sixth Amendment right to counsel at a post-indictment pretrial lineup results in the exclusion of a subsequent in-court identification of defendant unless the government can "establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification." *Id.* at 240, 87 S.Ct. 1926. Although an unnecessarily suggestive procedure that violates Fifth Amendment due process goes directly to the issue of reliability, whereas the relationship between lack of counsel and reliability is somewhat more remote, the analogy with the Sixth Amendment identification cases is close enough to justify imposing the same intermediate burden of proof upon the prosecution on the reliability issue.

11. In here declaring a "clear and convincing" standard, we follow the precedent of *United States v. Wade, supra,* and its progeny in other jurisdictions. See nn. 7, 10 above. Those cases leave little doubt that "clear and convincing" designates a standard of proof, as required by the federal Constitution, that exceeds one "by a preponderance," but that falls short of one "beyond a reasonable doubt." The use of the identical phrase "clear and convincing" in some Maine cases to describe the quality of evidence required to prove by a preponderance fraud and some similar issues in civil cases, see *Horner v. Flynn,* Me., 334 A.2d 194 (1975), should not obscure the intent here to require that the State establish the reliability of the identification by an intermediate standard of proof.

procedure is outweighed by the reliability of the identification as measured by the factors set forth in *Neil v. Biggers, supra* 409 U.S. at 199–200, 93 S.Ct. 375. See note 3 above.

### Standard of Appellate Review

■ The determination of the second question, *i. e.*, the proper standard of appellate review to be applied to the trial court's findings regarding either the suggestiveness of the pretrial identification procedure or the reliability of a witness' identification of the defendant, rests on a recognition that the lower court's resolution of these issues requires two steps. First, the trial judge must find "historical facts," *i. e.*, facts "in the sense of a recital of external events and the credibility of their narrators." *Brown v. Allen*, 344 U.S. 443, 506, 73 S.Ct. 397, 97 L.Ed. 469 (1963) (Opinion of Mr. Justice Frankfurter). Second, he must draw legal conclusions from these facts. For example, historical facts bearing on the question of the suggestibility of the August 16, 1977 identification procedure in the instant case include: the number of pictures in the photographic array; the ages of the men depicted; any comments the investigating officer may have made to the witness; and any other factors which may have drawn the prosecutrix's attention to defendant. Similarly, historical facts relevant to the issue of whether the prosecutrix's in-court identification has a basis independent of the unnecessarily suggestive mug shot showup of October 30, 1977 include: the number and length of the prosecutrix's opportunities to view her assailant; the adequacy of the lighting on each occasion; and the prosecutrix's own assessment of her ability to identify defendant. Since the presiding justice was present at trial and had the opportunity to view the witnesses, the Law Court affords his findings of historical facts considerable deference.[12]

In contrast, as the Supreme Court noted in *Neil v. Biggers, supra* 409 U.S. at 193 n. 3, 93 S.Ct. 375 n. 3, where the challenge is to the legal conclusions drawn from historical facts, "the dispute between the parties is not so much over the elemental facts as over the constitutional significance to be attached to them." On such issues, the Law Court is in as good a position as the trial judge to determine whether the historical facts warrant a legal conclusion that the pretrial identification was unnecessarily suggestive or that an independent basis exists for the witness' identification of defendant. Moreover, the Law Court has a special responsibility to exercise its independent judgment to determine the validity of legal conclusions that are dispositive of a defendant's claim that he has been denied fair treatment in a criminal proceeding.[13] *State v. Northup, supra.*

12. We note that in the instant case the trial judge did not make an express finding regarding all historical facts relevant to each identification issue. In such cases, "[w]e are entitled to assume that the presiding justice found for the prosecution upon all issues of fact necessarily involved in the ultimate decision which was adverse to the Defendant." *State v. Broucher*, Me., 388 A.2d 907, 909 (1978).

13. Justice Frankfurter drew the distinction between findings of historical fact requiring great deference by appellate courts and conclusions drawn from facts requiring an independent examination by the reviewing court in the analogous context of a federal district court review of a state court decision on a petition for habeas corpus:

"Where the ascertainment of the historical facts does not dispose of the claim but calls for interpretation of the legal significance of such facts, . . . the District Judge must exercise his own judgment on this blend of facts and their legal values. Thus, so-called mixed questions or the application of constitutional principles to the facts as found leave the duty of adjudication with the federal judge." *Brown v. Allen, supra* 344 U.S. at 507, 73 S.Ct. 397, 446.

Moreover, in exercising the Supreme Court's power of direct review over state decisions on matters involving the federal constitution, Justice Frankfurter sounded a similar theme:

"On review here of State convictions, all those matters which are usually termed issues of fact are for conclusive determination by the State courts and are not open for reconsideration by this Court. Observance of this restriction in our review of State courts calls for the utmost scruple. But 'issue of fact' is a coat of many colors. It does not cover a conclusion drawn from uncontroverted happenings, when that conclusion incorporates standards of conduct or criteria

■ Accordingly, we hold that a trial judge's findings of historical facts on relevant identification issues will be overturned only when clearly erroneous. The legal conclusions drawn from those facts, however, are subject to the independent examination and judgment of the Law Court. We now proceed to apply those standards of review to the findings of the trial judge in the instant case.

### A. The Out-of-Court Identification

■ The presiding justice expressly held that the August 16, 1977 identification procedure in which the investigating officer showed the prosecutrix a photographic array was not unnecessarily suggestive. Although the presiding justice did not make express findings of the historical facts on this issue, we hold that the record before us, which includes the photographic array, provides firm support for his legal conclusion.

Defendant finds no fault with the number of pictures in the array or the conduct of the police officer during the identification procedure. The photographs numbered fifteen, and defendant admits that the "officer made no suggestion during the process" that might have drawn the prosecutrix's attention to Cefalo. Instead, defendant argues that the procedure was unnecessarily suggestive because: (1) only one photograph, aside from that of Cefalo, was a "close-up," thus drawing the prosecutrix's attention to defendant; (2) only four of the fifteen men depicted were in Cefalo's age group; and finally, (3) few of the photographs, aside from that of defendant, showed men with physical characteristics similar to those depicted in the composite drawing made shortly after the incident.

An examination of the photographs presented to the prosecutrix on August 16

fails to confirm defendant's allegation of suggestiveness. At least six of the men depicted share Cefalo's general facial characteristics, the age distribution is reasonable in light of the prosecutrix's report following the incident that her assailant was around 30 years of age, and the suggestive impact of the "close-up" is of limited significance. The August 16 confrontation consisted of the presentation of the photographic array praised in *Manson v. Brathwaite, supra* at 117, 97 S.Ct. 2243, not the single photographic showup condemned in *Simmons v. United States,* 390 U.S. 377, 383, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), and *State v. Levesque,* Me., 281 A.2d 570, 576 (1971). In short, we find that the record warranted the trial judge's conclusion that the August 16 procedure was not "unnecessarily suggestive."

### B. The In-Court Identification

■ The presiding justice held that (1) the October 30 mug shot identification procedure was unnecessarily suggestive, but that (2) the prosecutrix's in-court identification of Cefalo was not tainted either by that October 30 identification procedure or by the photographic lineup on August 16, 1977. The accuracy of the trial justice's first finding is beyond question. The historical facts of the October 30 identification procedure are not disputed; and the applicable cases, *Simmons v. United States, supra,* and *State v. Levesque, supra,* leave no doubt that the presentation of a single mug shot of a suspect is unnecessarily suggestive.

■ Thus, our major task is to determine whether the trial justice was justified in concluding that the State had proved by clear and convincing evidence that the reliability of the prosecutrix's in-court identifi-

---

for judgment which in themselves are decisive of constitutional rights. Such standards and criteria, measured against the requirements drawn from constitutional provisions, and their proper applications, are issues for this Court's adjudication. [Citation omitted] Especially in cases arising under the Due Process Clause is it important to distinguish between issues of fact that are here foreclos-

ed and issues which, though cast in the form of determinations of fact, are the very issues to review which this Court sits." *Watts v. Indiana,* 338 U.S. 49, 50–51, 69 S.Ct. 1347, 93 L.Ed. 1801 (1948).
*See also Townsend v. Sain,* 372 U.S. 293, 309 n. 6, 83 S.Ct. 745 n. 6, 9 L.Ed.2d 770 (1963); *United States ex rel. Thomas v. New Jersey, supra.*

cation of Cefalo outweighed the "corrupting influence of the suggestive police procedure." [14] *State v. St. Onge, supra* 392 A.2d at 50; *see also Manson v. Brathwaite, supra* 432 U.S. at 114, 97 S.Ct. 2243. Again, aside from finding that the prosecutrix had the opportunity to view her assailant from a distance of two to three feet, the presiding justice did not make express findings regarding the relevant historical facts. However, our examination of the record leads us to share the presiding justice's conclusion that the prosecutrix's in-court identification of defendant reflected her memories of the rape incident rather than the suggestive impact of the October 30 identification procedure. The record discloses that the prosecutrix had two opportunities to view her assailant's facial features on the night of the rape: first, when the rapist appeared on the sidewalk without a mask and asked to use the phone, and second, when during the rape after the assailant had removed his own mask the scarf tied around the prosecutrix's face slipped for approximately ten seconds.[15] Although the presiding justice was presented with conflicting testimony regarding the amount of light that was present on each occasion, there was enough evidence to permit the trial judge to conclude that the lighting was adequate to enable the prosecutrix to see her assailant's face at both times. Moreover, the prosecutrix had particular reason to be attentive during the rape. As the Supreme Court observed in *Neil v. Biggers, supra*, a rape victim is "no casual observer, but rather the victim of one of the most personally humiliating of all crimes." *Id.*, 409 U.S. at 200, 93 S.Ct. 375, 383. Following the rape, the prosecutrix was able to provide a description of her assailant that served as a basis for a composite picture that bears at least some resemblance to Cefalo. The prosecutrix reported that her assailant's eyes were blue or green, while Cefalo's eyes are brown; but this error in a minor detail does not undermine the general accuracy of her description. We also note that the prosecutrix testified that she altered the composite sketch a few days after the rape to reflect an observed facial deformity around the mouth. The record shows that Cefalo has a protruding, jagged tooth.

The prosecutrix made a positive in-court identification of defendant in March 1978, over eight months after the rape. Ordinarily, a delay of this magnitude detracts considerably from the reliability of the identification. However, the prosecutrix's tentative identification of defendant on August 16, only five weeks after the rape, reduces the negative impact of this factor.

Defendant lays special emphasis on the prosecutrix's own admission under cross-examination that her positive in-court identification was based in part on the rape incident of July 6, 1977, and in part on the mug shot showup of October 30, 1977. However, both on direct examination by the prosecutor and in a subsequent examination by the court, the prosecutrix stated unequivocally that her identification of Cefalo was based entirely on her independent recollections of her assailant from the July rape. She stated that she would have recognized Cefalo in court without having seen the mug shot. Assuming as we must that the presiding justice resolved this conflict in the prosecutrix's testimony in favor of the State, we cannot say that his finding was clearly erroneous.

Given these facts, clearly set forth in the record, we agree with the trial justice's conclusion that the State sustained its burden by showing by clear and convincing evidence that the reliability of the prosecutrix's in-court identification of defendant,

---

14. Our affirmance of the trial judge's conclusion that the August 16, 1977 confrontation was not defective is dispositive of defendant's claim that the trial judge erred in finding that the August 16 photographic array did not taint the prosecutrix's subsequent in-court identification of Cefalo.

15. The evidence fully supports the finding that the man who asked to use the prosecutrix's telephone and the assailant were one and the same. The prosecutrix testified that her assailant was wearing a distinctive black poncho on both occasions, and she also had a considerable opportunity to compare the speech of the first man and that of her masked assailant.

as measured by the factors outlined in *Neil v. Biggers, supra* 409 U.S. at 199–200, 93 S.Ct. 375, outweighed the corruptive effect of the unnecessarily suggestive single photograph showup of October 30.

## II.   *Sufficiency of the Evidence*

Having found that the prosecutrix's identification of Cefalo as her assailant was admissible, there can be no question that the evidence was sufficient to support the jury's verdict of guilty.  As we have stated previously, *State v. Foley*, Me., 392 A.2d 1094 (1978); *State v. McFarland*, Me., 369 A.2d 227 (1977), the testimony of a prosecutrix is sufficient alone to support a conviction for rape.

Accordingly, the entry must be:

Appeal denied.

Judgment affirmed.

NICHOLS, J., did not sit.