STATE of Maine

v.

Robert COMMEAU.

Supreme Judicial Court of Maine.

Dec. 31, 1979.

David M. Cox, Dist. Atty., Gary F. Thorne (orally), Asst. Dist. Atty., Bangor, for plaintiff.

Marshall A. Stern (orally), Bangor, for defendant.

Before McKUSICK, C. J., and WERNICK, ARCHIBALD, GODFREY, NICHOLS and GLASSMAN, JJ.

McKUSICK, Chief Justice.

Defendant Robert Commeau appeals from the judgment of conviction entered in Superior Court after a Penobscot County jury found him guilty of robbery, 17–A M.R.S.A. § 651 (Supp.1979). He bases his appeal on the ground that the presiding justice erred in admitting evidence of an out-of-court identification by the only prosecution witness who identified defendant as being connected to the crime. Because we find that the State failed at the suppression hearing to show the reliability of the identification by clear and convincing evidence, we sustain the appeal.

At the pretrial hearing on defendant's motion to suppress the out-of-court identification, the evidence showed that during the

evening of December 6, 1978, an armed robbery occurred at a food store in Brewer. Upon their arrival at the scene, the police were told that a man carrying a shotgun had entered the store, demanded and received money in a paper bag, and run away with it. No one in the store could identify the perpetrator because he had worn a thermal underwear shirt around his face.

The only person who could attempt an identification was Thomas, a 16-year-old boy, who had been walking on a street near, but out of sight of, the store when he saw a man with bushy hair and a beard, wearing dark clothes, carrying a paper bag and a long object, come running from the direction of the store. While making his observations—all from a distance of at least 60 feet, after dark—Thomas was unaware that a robbery had occurred. The man jumped into and drove away a truck that had earlier caught Thomas' attention; it was a "good looking" white Ford Ranchero, with mag wheels.

Soon thereafter Thomas' description to the police of the Ranchero prompted several of them to go to defendant's home. As the officers were arresting and handcuffing defendant, another officer was bringing Thomas and his brother (who had been in the store during the robbery) to defendant's house in a police car. Thomas identified the Ranchero parked in defendant's driveway as being the same vehicle he had seen earlier that evening. After a minute or two, Thomas watched as two uniformed police officers brought a handcuffed defendant—who had bushy hair and a beard—out of the house. From a distance of 60 feet, Thomas said that defendant was the same man he had seen running near the robbery scene.

A search of defendant's house immediately after his arrest turned up no incriminating evidence. Two of the people who had been in the food store during the robbery were brought to the police station, but could not confirm Thomas' identification of defendant. At the suppression hearing Thomas conceded that prior to the hearing he had told a schoolmate that he could not

be sure who the person was he had seen after the robbery.

The Superior Court denied suppression of the out-of-court identification. Although finding that the viewing of defendant while handcuffed and in the custody of two uniformed officers was "certainly suggestive", the presiding justice concluded that Thomas had "had some opportunity to make an independent judgment." The court held that the State had shown, by clear and convincing evidence, that Thomas' identification had a basis independent of the suggestive showup. At trial, held the next day after the suppression hearing, Thomas testified, over defense counsel's objection, to his observations outside the store and defendant's home. Defendant has renewed his objection on appeal to this court.

■■■ The impermissibly suggestive circumstances of the out-of-court identification require the State to show, by clear and convincing evidence, that the identification was reliable. See State v. Cefalo, Me., 396 A.2d 233, 236–40 (1979). "Clear and convincing" is a standard of proof greater than "preponderance" of the evidence but less than "beyond a reasonable doubt." Id. at 238 n. 11. When we look at all of the evidence in the record of the suppression hearing in a light most favorable to the State, id. at 240, we are forced to say that the evidence does not meet the State's "clear and convincing" burden of proof. The circumstances surrounding the confrontations outside the store and later outside defendant's house detract from the reliability of Thomas' out-of-court identification. His opportunity to view the perpetrator shortly after the robbery was limited by the shortness of time (a few seconds), the distance (60 feet), and the lighting at night (one streetlight in the general vicinity). Also, at the time, Thomas did not know a robbery had occurred and thus did not have that reason to give the individual his particular attention. In addition, the circumstances prevailing at defendant's house when Thomas made his identification were powerfully suggestive: A similar, unusual-looking vehicle was parked in defendant's

driveway; defendant, as did the robber, had bushy hair and a beard; the police brought defendant in handcuffs out of his house toward a police car; and the 16-year-old boy making the identification was seated with a police officer in the front seat of one police car surrounded by other police cars and officers. The fact that Thomas immediately made an identification is not necessarily evidence of reliability; rather it may indicate that he yielded to the suggestivity of the circumstances. *See State v. St. Onge*, Me., 392 A.2d 47, 51 n. 3 (1978); *United States v. Wade*, 388 U.S. 218, 229, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

We must conclude, then, that in permitting evidence at trial of Thomas' out-of-court identification—the only evidence linking defendant to the crime—the presiding justice committed error seriously prejudicial to defendant.[1]

The entry must be:

Appeal sustained.

Judgment of conviction set aside.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

POMEROY, J., did not sit.

---

1. There were two other occurrences at trial which, although not necessary to the disposition of the case here, warrant comment.

   First, we disapprove of the prosecutor's argumentative cross-examination of defendant about his having heard testimony by the State's witnesses and whether he agreed with it or not. Cross-examination that tries to push a defendant into saying other witnesses lied is impermissible. *See People v. Graves*, 61 Ill.App.3d 732, 746–747, 18 Ill.Dec. 829, 839–40, 378 N.E.2d 293, 303–04 (1978); *People v. Davis*, 63 App.Div.2d 685, 404 N.Y.S.2d 661, *lv. to app. denied*, 45 N.Y.2d 779, 409 N.Y.S.2d 1036, 381 N.E.2d 171 (1978).

   Second, the prosecutor extensively cross-examined a key defense witness as to his failure to go to the police or district attorney's office, instead of to defense counsel, with his exculpatory information. We note that other courts have frowned on this type of cross-examination. *See, e. g., United States v. Rubin*, 559 F.2d 975, 981–84 (5th Cir. 1977); *United States v. Huff*, 143 U.S.App.D.C. 163, 169–70, 442 F.2d 885, 891–92 (D.C.Cir.1971); *People v. Cole*, 584 P.2d 71, 73 (Colo.1978); *People v. Maschi*, 65 App.Div.2d 405, 411 N.Y.S.2d 298 (1978). For an extensive analysis of the dangers of such cross-examination, see *People v. Colarco*, 68 App.Div.2d 430, 433, 417 N.Y.S.2d 681, 683 (1979) (Sandler, J., dissenting).