**STATE of Maine**

v.

**James BAKER.**

Supreme Judicial Court of Maine.

Argued Sept. 2, 1980.

Decided Dec. 4, 1980.

David M. Cox, Dist. Atty., Gary F. Thorne, Asst. Dist. Atty., for plaintiff.

Vafiades, Brountas & Kominsky, Marvin H. Glazier (orally), Bangor, for defendant.

Before WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

GLASSMAN, Justice.

The appellant, James Baker, following a jury trial in the Superior Court, Penobscot County, was convicted of armed robbery, 17–A M.R.S.A. § 651(B) and (E). In his timely appeal, Baker asserts four errors: (1) that the court erroneously admitted evidence relating to pre–trial identifications of the defendant, (2) that the court erroneously admitted in–court identifications of the defendant, (3) that the court should have granted a mistrial because of a prejudicial question by the prosecutor, and (4) that the evidence was insufficient to support the verdict. We affirm the judgment.

On February 8, 1978, the Brewer Savings Bank in Brewer was robbed by two men, one of whom was carrying a pistol. Two tellers each gave the Brewer police a description of the man with the gun. On the basis of these descriptions, the police prepared two displays of eight photographs each. On February 10 and 11, 1978, tellers Charlotte Aubrey and Jewell Pierce viewed the photo arrays. Neither teller identified any of the pictures, although Charlotte Aubrey noted similarities between one of the bank robbers and two of the men pictured.

Sometime after February 11, Brewer police Sergeant John Bryant drew composite sketches of the man with the gun. Bryant based his sketches on the tellers' descriptions and on still photographs made from the bank's videotapes of the robbery. Charlotte Aubrey and Jewell Pierce viewed these sketches and altered them to conform to their recollections of the man.

After the tellers had altered the sketches, Brewer police noted a resemblance between the sketches and a picture of Baker, who was wanted by the Camden police. Baker was arrested by the Brewer police on February 24, 1978, pursuant to the Camden warrant. He was booked and photographed. The Brewer police immediately prepared a third photographic array containing Baker's photograph. Both tellers viewed this third photographic array on February 24, and Charlotte Aubrey picked out Baker's picture.

On February 27, 1978, the Brewer police arrested Baker for the bank robbery and conducted an in–person lineup with Baker's counsel present. At this lineup, Charlotte Aubrey and Jewell Pierce identified Baker as the man who had robbed the Brewer Savings Bank.

Baker was indicted for robbery. Thereafter, his counsel moved to suppress "any testimony as to the out–of–court identification of the Defendant on the basis that such out–of–court identification was due to the

improper and unnecessary suggestive procedures used by the State." A suppression hearing was held and the Superior Court Justice denied Baker's motion, finding that "beyond any reasonable doubt . . . the out-of-court identifications of the Defendant were completely free from any improper or suggestive procedures."

Baker's first trial in January, 1979, ended in a mistrial. A second trial was held in November, 1979. Both Charlotte Aubrey and Jewell Pierce made in-court identifications of Baker. Defense counsel did not object to either identification. Counsel did renew his objection to the admission of the pre-trial identifications, but the objection was overruled on the basis that the issue had already been ruled upon in the suppression hearing.[1]

I

In *State v. St. Onge*, Me., 392 A.2d 47 (1978), we established rules governing a trial court's disposition of a challenge to the admissibility of identification evidence. The court must hold an evidentiary hearing to determine (1) if the procedures used by the State were unduly suggestive and, if so, (2) whether the "corrupting influence" of the suggestive procedures was outweighed by the reliability of the identification. *Id.* at 50.

■ In *State v. Cefalo*, Me., 396 A.2d 233 (1979), we expanded upon the teaching of *St. Onge*, holding that the defendant bears the initial burden of showing by a preponderance of the evidence that the pre-trial procedures were suggestive. Upon such a showing, the burden then shifts to the State to show by clear and convincing evidence that the procedures produced a reliable identification despite their suggestiveness. *Id.* at 236–39. In denying Baker's motion

to suppress the pre-trial identifications, the court made no on-the-record findings of fact, although we have repeatedly emphasized the need for such findings. *E. g., State v. Doughty*, Me., 408 A.2d 683, 685–86 (1979); *State v. Broucher*, Me., 388 A.2d 907, 909 (1978); *State v. Caplan*, Me., 353 A.2d 172, 175 n. 5 (1976). The hearing Justice did state the legal conclusion that the pre-trial procedures employed by the police were, "beyond any reasonable doubt," not suggestive.[2] We will assume that the hearing Justice found the historical facts necessary to support that legal conclusion and will overturn those assumed findings only if, upon review of the record, we find them to be clearly erroneous. *State v. Cefalo, supra*, 396 A.2d at 239–40.

■ Here the historical facts necessary to support the hearing Justice's legal conclusion must be: that the photographic and in-person lineups presented a fair array of suspects, men of similar age and physical characteristics; that the Brewer police did not use any procedures which set the defendant apart from all other suspects; and that the police did not seek by word or deed to influence the witnesses in the making of any identification. We have examined the three photo arrays as well as photographs of the in-person lineup. From that review and from our review of the testimony adduced at the suppression hearing, we conclude that the record supports the findings of historical fact necessary to support the court's legal conclusion. All three photo arrays contained pictures of white males of reasonably similar age and facial characteristics. The pictures are "fairly representative of people who might fit the defendant's general description." *State v. Chapman*, Me., 358 A.2d 387, 392 (1976). Both witnesses noted that the pictured men bore

---

1. Although the issue was phrased as an objection to the admission of the pre-trial identifications, counsel's objection at trial raises the question of the correctness of the ruling at the suppression hearing. Our review of the admissibility of the pre-trial identifications will thus be limited to a review of the ruling at the suppression hearing refusing to suppress the identification evidence.

2. Although such conclusions are denominated legal, this is only to distinguish them from the findings of historical fact and to characterize the standard of review. *See State v. Cefalo, supra*, 396 A.2d at 239 n.13.

similarities to one another, and Charlotte Aubrey noted resemblances between men in the photo arrays and the bank robber as she remembered him. The photographs of the in–person lineup reveal that the persons in that lineup did fairly resemble one another. All six men were white males of the same general age, build and facial features. All six had some facial hair.

Baker complains that only he appeared in the last photo array and in the in–person lineup. Jewell Pierce did not identify Baker from the photo array but did positively identify him at the in–person lineup. The hearing Justice must have found that the photo lineup did not influence Jewell Pierce to identify Baker at the in–person lineup. At the suppression hearing, she specifically testified that at the in–person lineup she did not recognize the defendant as someone whose picture she had previously seen but only as the same person she had seen at the bank. The hearing Justice had the opportunity to gauge the credibility of the witness at the suppression hearing and, based upon his ultimate conclusion, he must have accepted her testimony as truthful. Nothing in the record suggests that a factual finding based upon this testimony was clearly erroneous.

When considering the conduct of the Brewer police, we note that the evidence at the suppression hearing revealed the police never showed the witnesses a photo of Baker alone, the officers never commented on the witnesses' failure to identify anyone pictured in the first two arrays, they did not indicate the witnesses had made "correct" choices from the third photo array or the in–person lineup, and the police repeatedly cautioned both tellers not to discuss the robbery or the photo arrays between themselves. Totally absent from the record is any evidence of the suggestive techniques we have condemned in previous cases. *See, e. g., State v. Commeau*, Me., 409 A.2d 247, 248 (1979); *State v. Doughty, supra*, 408 A.2d at 686; *State v. Cefalo, supra*, 396 A.2d at 240; *State v. Rowe*, Me., 314 A.2d 407, 413–14 (1974); *State v. Northup*, Me., 303 A.2d 1, 5 (1973); *State v. Boyd*, Me., 294 A.2d 459, 463–64 (1972).

Because we find no clear error in the assumed findings of historical fact necessary to support the hearing Justice's legal conclusion that the pre–trial identification procedures were not suggestive, we must uphold his legal conclusion.

## II

■ At trial, Charlotte Aubrey and Jewell Pierce both positively identified Baker as the man who robbed the Brewer Savings Bank. No objection was made to that testimony. At oral argument before this Court, the defendant asserted that the objection to the out–of–court identifications should be deemed as an objection to the in–court identifications as well. We intimate no opinion as to whether the defendant should be deemed to have waived any objection to the in–court identifications, *see* M.R.Evid. 103(a)(1), because our conclusion that the out–of–court identifications were not impermissibly tainted makes the in–court identifications *per se* lawful. *State v. St. Onge, supra*, 392 A.2d at 50.

## III

During the direct examination of Lieutenant Charles Shuman of the Brewer Police Department, the prosecutor asked who had been present at the February 27 lineup. Lt. Shuman listed several names including that of Baker's counsel. The prosecutor then asked a second question which tended to emphasize the presence of Baker's counsel. The defendant moved for a mistrial on the ground that the prosecutor's question implied that defense counsel had condoned the identification procedures. The presiding Justice concluded that no prejudice had resulted but offered to give a cautionary instruction, stating:

[I]f you can think of something that you would like me to say that would somehow limit your presence to something less than endorsement of the issues of the identification process, I would be glad to say it. I don't know if I can get into it without—without really doing more than attract attention to the fact.

To this comment of the court, Baker's counsel responded:

> I would like to let my motion stand. If I, perhaps, could come up with something by the time you give your instructions, I will give it to you.

Apparently Baker's counsel made the tactical judgment not to submit any proposed instruction. The record does not reveal that he proposed any instruction, nor did he object to the instructions as given. Baker does not complain on appeal of the absence of cautionary instructions to the jury. Under these circumstances, our review is limited to a determination of the propriety of the denial of the motion for a mistrial. M.R.Crim.P. 30(b).

A motion for mistrial is addressed to the sound discretion of the presiding Justice, and his ruling must stand in the absence of a clear abuse of discretion. *See State v. Bazinet*, Me., 372 A.2d 1036, 1040 (1977). The presiding Justice should deny a motion for a mistrial except in the rare case when the trial cannot proceed to a fair and impartial result and when no remedial measures short of a new trial will satisfy the interests of justice. *State v. Bazinet, supra*, 372 A.2d at 1040; *State v. Kelley*, Me., 357 A.2d 890, 896 (1976). If there was any implication that defense counsel condoned the identification procedures by his mere presence, such an implication could have been corrected easily by a proper cautionary instruction. The tactical judgment of defense counsel not to request such an instruction, apparently on the theory that this would merely emphasize the matter in the jury's mind, does not convert what was an otherwise proper exercise of judicial discretion into error. The defendant, having declined to avail himself of the remedial measure which the court offered, cannot now complain of the failure to grant a mistrial since such a remedial measure would have eliminated any possible prejudice which may have resulted from the prosecutor's question.

## IV

Baker's contention that the evidence was insufficient to support the verdict is predicated upon the assumption that the out-of-court and in-court identifications were inadmissible. Because the identification evidence was properly admitted, it is unquestionable that the evidence received was sufficient, if believed, to support the verdict.

The entry is:

Judgment affirmed.

All concurring.