United States Court of Appeals
For the First Circuit

No. 99-1245

SANDRA COOMBS,

Petitioner, Appellant,

v.

STATE OF MAINE,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

Before

Selya, Circuit Judge,

Campbell, Senior Circuit Judge,

and Boudin, Circuit Judge.

Gail E. Peabody for petitioner.
Nancy Torresen, Assistant Attorney General, with whom Andrew
Ketterer, Attorney General, and Donald Macomber, Assistant Attorney
General, were on brief for respondent.

January 20, 2000

CAMPBELL, Senior Circuit Judge. Petitioner-appellant
Sandra Coombs appeals from the district court's denial of her
petition for habeas corpus relief from her theft conviction in
1996. Coombs contends that she is entitled to relief because the
state compelled her confession to the theft by promising not to
charge her for possession of a small amount of marijuana discovered
at the time of her arrest. We affirm.
I. FACTUAL BACKGROUND
Coombs was charged with the theft of a sweater from L.L.
Bean in Freeport, Maine. On December 16, 1995, her companion,
Gifford Campbell, attempted to return a stolen sweater to the L.L.
Bean store while Coombs and another individual waited in her car in
the parking lot. After detaining Campbell inside the store, a
store detective and Freeport Police Sergeant Terry Carter
approached Coombs in her car and requested her driver's license and
registration. When Coombs retrieved these items from the car's
glove compartment, Carter saw a small bag of marijuana in the
compartment and seized it. 
At the suppression hearing, Carter testified that the
marijuana was a "very small quantity," while Coombs testified that
it was approximately a quarter of an ounce. At trial, Coombs
testified that it was "quite a large amount," "probably say half a
sandwich bag full," an amount she later described as "serious." 
Under Maine law, possession of a usable amount of marijuana would
be a civil, not a criminal, infraction. See 22 M.R.S.A. 2383(1)
(1999). Possession of more than one and one-quarter ounces of
marijuana gives rise to a presumption that a person is engaging in
unlawful furnishing of marijuana, which is a crime. See 17-A
M.R.S.A. 1106(3)(a) (1999).
Coombs agreed to go into the store with Carter to discuss
the matter of the sweater. Carter radioed the Freeport Police
Department to request a records check on Coombs. Upon discovering
that there was an outstanding warrant for Coombs relating to an
unpaid fine, Carter placed her under arrest. He then transported
her to the police station and gave her Miranda warnings. Coombs
indicated that she understood the warnings, and agreed to answer
questions. At no point during the interrogation did Coombs request
a lawyer or state that she no longer wanted to answer Carter's
questions.
Carter testified that he interrogated Coombs for "a
couple of hours," but Coombs claimed the questioning went on for
"three or four hours." Coombs testified at the suppression hearing
that she was handcuffed to a pole during the entire interrogation,
while Carter testified she was only handcuffed for fifteen to
thirty minutes while he photographed and fingerprinted her, and for
additional short periods of time while he was out of the room. 
Coombs further stated that she was afraid and physically
uncomfortable during the interrogation, and cried periodically. 
Coombs testified that Carter told her that she "could
take two charges of theft and possession of marijuana or [she]
could confess to the theft and he'd flush the marijuana." 
Eventually, Carter asked Coombs to make a "voluntary written
statement," and she agreed. At the suppression hearing, Coombs
stated:
I set there handcuffed to a pole for three or
four hours, you know, and it's either you take
the - you know, confess to theft or you take
both, and I just figured that would be the
easiest way to - you know, instead of being
handcuffed to the pole for five more hours. I
didn't feel there was any other way.

Contrary to Coombs's testimony, Carter denied making any
promises to Coombs in exchange for her confession, and denied
telling her that he would not charge her with marijuana possession
if she confessed to the theft. He testified, however, that he had
originally intended to charge her with possession of marijuana and
had written a summons for that offense. Moreover, he conceded that
after Coombs signed the written confession, he flushed the
marijuana down the toilet and tore up the summons. Carter offered
no explanation for these actions at the suppression hearing; at
trial, he testified that he "felt bad" for Coombs.
II. PROCEDURAL HISTORY
On January 11, 1996, Coombs was charged in the state
district court with Class E theft pursuant to 17-A M.R.S.A. 353
(1983). See State v. Coombs, No. 95-03959 (Maine Dist. Ct., Div.
Bath-Brunswick). Class E theft is punishable by no more than six
months' imprisonment. See 17-A M.R.S.A. 1252(2)(E). Coombs
pleaded not guilty at her arraignment. On February 26, 1996, she
filed a motion to suppress her written confession on the ground
that the confession had been compelled by the state's promise to
drop the marijuana charge, and was therefore involuntary under the
Fifth Amendment to the United States Constitution. 
After an evidentiary hearing on the suppression motion,
the Maine district court ("the suppression court") denied the
motion. The suppression court found, inter alia, that Coombs was
read her Miranda warnings at the station house; indicated that she
understood the warnings; did not request counsel; did not tell
Carter that she wanted to stop answering questions; was handcuffed
to a horizontal rail during some intermittent periods of time
during the interrogation when she was left alone by Carter, who was
going between Coombs's room and another suspect's room; and was
interrogated for approximately two to three hours. As to Carter's
alleged promise of leniency in exchange for Coombs's confession,
the court stated: 
I'm satisfied that there were no promises
which would give rise to a constitutional
infirmity, and I'm satisfied beyond a
reasonable doubt that the con - that the
admission or the statement or whatever is in
this was, in fact, voluntary.

Coombs's confession was admitted into evidence at her
trial, which took place in the Maine Superior Court. On September
10, 1996, following a two-day trial, the jury returned a guilty
verdict. The court sentenced Coombs to thirty days' imprisonment,
but stayed the sentence pending appeal and the instant proceedings. 
On September 27, 1996, Coombs appealed from her
conviction to the Maine Supreme Judicial Court sitting as the Law
Court pursuant to 15 M.R.S.A. 2115 and M. R. Crim. P. 37. Her
appeal focused on the voluntariness of her confession and the
voluntariness of her waiver of Miranda rights. The Law Court
affirmed Coombs's conviction on January 2, 1998. State v. Coombs,
704 A.2d 387 (Me. 1998). Accepting the suppression court's
findings that Coombs was handcuffed only intermittently (which the
Law Court construed, based on Carter's testimony, to have been
fifteen to thirty minutes) and that proper Miranda procedures were
followed, the Law Court rejected Coombs's argument that her theft
confession should have been suppressed. See id. at 391. On the
question of whether the confession was involuntary because it was
given in exchange for Carter's promise not to charge her with
marijuana possession, the court stated:
A confession motivated by a promise of
leniency by a person with apparent authority
to execute the promise is involuntary and
inadmissible. State v. Tardiff, 374 A.2d 598,
601 (Me. 1977). At the suppression hearing,
Sergeant Carter testified that he did not
promise Coombs anything in exchange for her
confession and, although he conceded that he
flushed the marijuana down the toilet, he
denied telling Coombs that she would not be
charged with possession if she confessed to
the theft. Although Coombs testified to the
contrary, the suppression judge, as the fact
finder, was free to accept Sergeant Carter's
testimony over Coombs'. See State v.
Larrivee, 479 A.2d 347, 349 (Me. 1984); State
v. Knights, 482 A.2d 436, 442 (Me. 1984). The
trial court's finding is based on competent
evidence and is not clearly erroneous. 

Id. The Law Court also rejected Coombs's contention that that
finding was ambiguous:
The suppression judge found that "there were
no promises which would give rise to a
constitutional infirmity[.]" Coombs contends
that this finding is ambiguous, that it is
unclear whether the suppression judge found
that no promise had been made or that a
promise of no constitutional significance had
been made. Because we assume that the
suppression judge found for the prosecution on
all issues of fact necessarily raised by his
denial of the motion to suppress, State v.
Cefalo, 396 A.2d 233, 239 n.12 (Me. 1979), we
reject Coombs' contention.

Id. at n.4.
On April 1, 1998, Coombs filed a petition for a writ of
certiorari in the United States Supreme Court, again on Fifth
Amendment grounds. The Court denied her petition on May 18, 1998. 
Coombs v. Maine, 118 S.Ct. 1819 (1998). Next, on October 5, 1998,
she filed a petition for a writ of habeas corpus in the federal
District Court for the District of Maine, limiting her argument to
the voluntariness of her confession. The magistrate judge held
that the Anti-Terrorism and Effective Death Penalty Act of 1996,
Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), on which the state
relied, did not apply to Coombs's habeas petition. Rather, he
applied a pre-AEDPA standard, which permitted state court findings
of fact to be overturned only if "not fairly supported by the
record." The magistrate judge concluded that the voluntariness of
Coombs's confession was supported by Carter's testimony. He went
on to hold that his conclusion would be the same even under an
independent review of the totality of the circumstances. 
On January 11, 1999, the district court affirmed the
magistrate judge's recommended decision and dismissed Coombs's
petition, but for reasons other than those set forth by the
magistrate judge. See Coombs v. Maine, Civ. No. 98-346-P-C (D. Me.
Jan. 11, 1998). The district court held that AEDPA applied to
Coombs's petition, so that the state court's factual findings were
"presumed to be correct" pursuant to 28 U.S.C. 2254(e)(1). It
further noted that AEDPA permitted it to grant the petition only if
the trial court's determination "was contrary to . . . clearly
established federal law as decided by the Supreme Court" or
"resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding." See 28 U.S.C. 2254(d)(1) & (2). 
The district court concluded that the suppression court's decision
was neither contrary to clearly established federal law nor based
on an unreasonable determination of the facts. Coombs timely filed
a notice of appeal to this court on January 22, 1999.
III. DISCUSSION
In reviewing a ruling on a petition for a writ of habeas
corpus, we examine the district court's legal conclusions de novo. 
See Simpson v. Matesanz, 175 F.3d 200, 205 (1st Cir. 1999). As the
district court correctly held (and the parties do not contest), the
standard of review to be applied is set forth by Congress in the
AEDPA statute. AEDPA provides that in a habeas proceeding, "a
determination of a factual issue made by a State court shall be
presumed to be correct," and the petitioner has the burden of
rebutting the presumption of correctness by clear and convincing
evidence. 28 U.S.C. 2254(e)(1). For this purpose, "factual
issues" are defined as "basic, primary, or historical facts: facts
'in the sense of a recital of external events and the credibility
of their narrators.'" Bryson v. Ward, 187 F.3d 1193, 1211 (10th
Cir. 1999), quoting Townsend v. Sain, 372 U.S. 293 (1963). See
also Thompson v. Keohane, 516 U.S. 99, 112-13 (1995) (interpreting
pre-AEDPA version of habeas statute). 
A state court's ultimate conclusions, including its legal
rulings, are reviewed pursuant to another clause of AEDPA, allowing
habeas relief only where the state court's adjudication
(1) resulted in a decision that was contrary
to, or involved an unreasonable application
of, clearly established Federal law, as
determined by the Supreme Court of the United
States; or 

(2) resulted in a decision that was based on
an unreasonable determination of the facts in
light of the evidence presented in the State
court proceeding. 

28 U.S.C. 2254(d). This provision governs not only pure issues
of law, but mixed questions of law and fact in which legal
principles are applied to historical facts. See Trice v. Ward, 196
F.3d 1151, 1169 (10th Cir. 1999); Sanchez v. Gilmore, 189 F.3d 619,
623 (7th Cir. 1999). See also O'Brien v. Dubois, 145 F.3d 16, 22-
23 (1st Cir. 1998).
If the suppression court upheld the confession because it
credited Carter's testimony that he had made no promise to flush
the marijuana in return for Coombs's confession to theft, Coombs's
case for federal habeas relief largely evaporates. Such a state
court finding of "basic, primary, or historical facts" based on a
credibility determination is "presumed to be correct," subject only
to rebuttal by "clear and convincing evidence." 28 U.S.C. 
2254(e)(1). We find no rebuttal of that nature here. 
Coombs's argument on appeal from the denial of her habeas
petition is that the state suppression court's own finding that
"there were no promises which would give rise to a constitutional
infirmity" fell short of indicating that it credited Carter's
version of events rather than Coombs's. In the absence of an
express finding, Coombs urges, the suppression court possibly may
have accepted Coombs's version that Carter promised to get rid of
the marijuana in exchange for a confession of theft yet still
concluded, as a matter of law, that Coombs's confession was
voluntary. In that case, Coombs contends, she has raised a federal
constitutional issue meriting habeas review.
To accept Coombs's position, however, we would have to
reject the Maine Law Court's interpretation of precisely what
action was taken by the suppression court, a court under its
jurisdiction. The Law Court clearly believed that the suppression
court had credited Carter's testimony that he did not promise
Coombs anything in exchange for her confession. In its opinion,
after setting forth the state's rule that a confession motivated by
a promise of leniency "is involuntary and inadmissible," the court
went on to recite Carter's denial of having made any such promise. 
Coombs, 704 A.2d at 391. It then stated that while Coombs
testified to the contrary, the suppression court, as fact finder,
"was free to accept Sergeant Carter's testimony over Coombs's" and
that "the trial court's finding is based on competent evidence and
is not clearly erroneous." Id. The Law Court thus plainly
construed the suppression court as having based its finding of
voluntariness on acceptance of Carter's version of the facts. 
Indeed, to have accepted Coombs's version would seemingly be
inconsistent with the legal premise stated at the outset of its
discussion; instead, it reasonably assumed that the suppression
court shared its understanding of the governing law, as previously
articulated by the Law Court. Moreover, in footnote 4, the court
specifically rejected Coombs's contention that the suppression
court's finding was ambiguous, opining that the suppression court
"found for the prosecution on all issues of fact necessarily raised
by his denial of the motion to suppress." Id. at 391 n.4. Even
the Law Court justice writing in dissent agreed that the majority
assumed a finding that no promise was made. See id. at 393. 
Hence, were we to speculate that the suppression court
credited Coombs, we would be rejecting an authoritative
interpretation by Maine's highest court of the findings of a
subordinate court and would be doing so on an issue that,
although close, was resolved well within reasonable parameters. 
Under the circumstances, we can see no justification, even were we
so inclined, for substituting our own different theory as to what
the suppression court might have intended. Cf. Miller, 474 U.S. at
112 (federal habeas court must "give great weight to the considered
conclusions of coequal state judiciary"). Additionally, we cannot
conclude, given the fact of Carter's testimony, that the
suppression court's decision, as so construed by the Law Court, was
based on an unreasonable determination of the facts in light of the
evidence presented in the state proceedings. We hold, therefore,
that habeas review is barred under 28 U.S.C. 2254(d)(2) and
(e)(1).
To keep the record clear, it is less apparent to us than
to the Maine Law Court that if a promise had been made it
automatically would have rendered the confession involuntary. See,
e.g., United States v. Byram, 145 F.3d 405, 407 (1st Cir. 1998)
(noting that Supreme Court has "confined" early common-law rule
that "confessions produced by promises not to prosecute or offers
of leniency were often excluded as involuntary."); Cole v. Lane,
830 F.2d 104, 109 (7th Cir. 1987) (holding that promise of leniency
is necessary, but not sufficient, condition of finding of
involuntariness); United States v. Parker, 549 F.2d 1217, 1220 (9th
Cir. 1977) (confession not involuntary where defendant questioned
by federal agents for four hours despite disputed testimony
concerning use of promises and physical force by agents). 
Affirmed.