STATE of Maine

v.

Marvin DOUGHTY.

Supreme Judicial Court of Maine.

Dec. 3, 1979.

David M. Cox, Dist. Atty., Gary F. Thorne, Asst. Dist. Atty. (orally), Bangor, for plaintiff.

Paine & Lynch by Martha J. Harris (orally), Bangor, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

POMEROY, Justice.

Defendant was convicted by a Penobscot County jury of robbery in violation of 17–A M.R.S.A. § 651(1).[1]  On appeal, defendant contends:

(1) that the trial court erred in admitting evidence of an out-of-court photographic identification because the array was so unnecessarily suggestive as to create a substantial risk of misidentification;

(2) that the subsequent in-court identification of defendant was impermissibly tainted by the out-of-court identification;  and

(3) that the trial court abused its discretion in admitting into evidence a color photograph of the robbery victim.

Because we find, under the totality of the circumstances, that the out-of-court identification was reliable, and therefore involved no violation of due process, we deny the appeal.

The evidence reveals that on the afternoon of June 11, 1978, Roderick Carney, a 67–year old man, was walking along a street in Bangor when he was grabbed from behind and thrown to the ground.  The unknown assailant said that he wanted money.  Carney struggled with his assailant

---

1. Title 17–A M.R.S.A. § 651 provides in pertinent part:

    1. A person is guilty of robbery if he commits or attempts to commit theft and at the time of his actions:

    A. He recklessly inflicts bodily injury on another;

for *"a few minutes"* until an approaching automobile stopped and the assailant fled.

Carney described his assailant as a 150-pound male with gray hair who was considerably taller than he, measuring between 5'8" and 5'10" tall. Carney recalled that the man was wearing denim pants and a denim jacket and, at the time of the attempted robbery, was carrying a white radio.

The following day, on June 12, 1978, Carney saw a gray-haired man walk past his house wearing denim pants and a denim jacket. Carney positively identified the man at that time as the individual who had attempted to rob him the day before.

Although Carney had discussed the assault with his wife and daughter, he did not report the incident to the police until June 13, 1978, two days later. In response to Carney's telephone call, a Bangor police officer came to Carney's home. After listening to Carney's description of the attempted robbery and of the assailant, the officer indicated to Carney that he knew who the assailant probably was. That afternoon a detective from the Bangor Police Department came to Carney's home with a photographic line-up comprised of black and white photographs of eight men. The detective testified that he had been given defendant's name and, when assembling the array, had looked for photographs of other persons with similar physical characteristics. He did not specifically look for individuals with similar hair coloration. In fact, only the defendant had gray hair, and only one other individual in the array had light hair.

When the detective showed Carney the folder containing the photographs, Carney looked at it for *"a minute or two,"* then chose number seven, a photograph of the defendant. The detective told Carney, *"that's the guy we're looking for."*

The photographic array was shown to Carney again on June 16, 1978, and he again identified the defendant.

Prior to trial, defendant moved *"to suppress the identification procedures used by the State for reason that they were unduly suggestive in violation of his* [defendant's] *constitutional rights."* After hearing, the motion was denied. A jury trial was subsequently had. In response to defendant's motion to suppress any in-court identification, the trial Justice conducted a voir dire examination of Carney pursuant to *State v. Boyd*, Me., 294 A.2d 459 (1972). The Court stated it was satisfied that Carney had made an independent in-court identification of the defendant and denied the motion.

The trial Justice also admitted over objection a color photograph of Carney's face taken several days after the attempted robbery.

Defendant appeals from the judgment of guilty entered on the verdict.

Defendant first contends that the admission into evidence of Carney's out-of-court identification violated his right to due process because the photographic array was so unnecessarily suggestive as to create a substantial risk of misidentification. In support of this argument, defendant points out that although one of the few particular features of the assailant Carney described to the police was hair color, only one photograph, that of the defendant, depicted an individual with gray hair. The defendant also complains that the police prejudiced the identification by stating beforehand that they knew who the offender was, and by confirming afterwards the *"correctness"* of Carney's choice.

Defendant's pre-trial motion to suppress the photographic identification was denied after hearing. In *State v. Cefalo*, Me., 396 A.2d 233 (1979), we defined the standard of appellate review to be applied to a trial court's findings regarding the suggestiveness of a pre-trial identification procedure:

> [A] *trial judge's findings of historical facts on relevant identification issues will be overturned only when clearly erroneous. The legal conclusions drawn from those facts, however, are subject to the independent examination and judgment of the Law Court. Id.* at 240.

The Justice presiding at the suppression hearing failed to make any specific findings

of fact on the record, despite our repeated urgings that such findings be made. Ordinarily, we would assume that the presiding Justice found all facts necessary to support his conclusion of law. *State v. Broucher*, Me., 388 A.2d 907 (1978). In this case, however, the Justice merely denied the defendant's motion. It is unclear whether the denial was based on a finding that the out-of-court procedures used by the police were not unnecessarily suggestive, or on a finding that, under all the circumstances, the identification was independently reliable. *State v. Cefalo, supra; State v. St. Onge*, Me., 392 A.2d 47 (1978); *State v. Boucher*, Me., 376 A.2d 478 (1977).

■ On a motion to suppress, the burden is initially on the defendant to prove, by a preponderance of the evidence, that the pre-trial identification procedure complained of was unnecessarily suggestive. Once this initial burden is met, the burden of proof shifts to the State to show, by clear and convincing evidence, that the identification is nevertheless reliable. Reliability is to be measured by the factors set forth in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). *State v. Cefalo, supra.*

■ Because no findings of fact or of law were made as a basis for denial of the motion to suppress the pre-trial identification, our examination of the correctness of that ruling must be made from the record. The record before us includes a transcript of both the hearing on the motion to suppress and the trial, as well as the photographic array presented to Carney for identification purposes. The facts in this case are not in dispute. We conclude from the record, as a matter of law, that although the pre-trial identification procedures were unnecessarily suggestive, Carney's out-of-court identification of defendant was nevertheless reliable, and therefore consistent with the requirements of due process.

Defendant finds no fault with the number or type of pictures in the array. He complains, however, that the victim described his assailant to the police as having gray hair, and that the defendant was the only individual in the array with gray hair.

■ We have consistently held identification procedures to be suggestive when the defendant is presented in a distinctive manner that sets him apart markedly from all the other participants. *State v. Northup*, Me., 303 A.2d 1 (1973); *State v. Boyd, supra; See State v. Boucher, supra.*

■ In previous cases we have looked to the witness's or the victim's description of the assailant when determining whether the identification of the defendant is based upon a distinctive presentation. In this case, not only did Carney describe his assailant as gray-haired, but also he testified at trial that in his opinion only one of the individuals in the array appeared to have gray hair. Nevertheless, we are unable to say as a matter of law that the photographic array, *in and of itself*, was unduly suggestive. We have examined the photographs presented to Carney on June 13, 1978. The array is comprised of eight individuals, most of whom have a generally similar appearance. The fact that defendant is the only man in the array with gray hair is significantly diminished by the fact that the photographs are in black and white. At least two of the other individuals pictured could have had gray hair. On this ground, defendant has not sustained his burden.

Defendant also complains, however, that comments by the police during the identification process made the procedure, viewed as a whole, unnecessarily suggestive. We agree.

■ The first officer to speak with Carney indicated that he was certain he knew who the assailant was. The detective who displayed the photographic array to Carney stated immediately after the defendant's photograph had been chosen, "*Yes, I think that that's the one, that's the picture we want there.*" Three days later Carney was again shown the array and again identified the defendant. Carney could have concluded from the officer's statement that the police knew who the assailant was, that one

of the individuals in the array was guilty of the crime. One individual pictured had hair that was more likely gray than the others. As soon as Carney indicated number seven, the detective confirmed that a *"correct"* identification had been made. Any uncertainties Carney could have had about his identification were thereby eradicated. On this analysis we conclude that the procedure used by the Bangor Police was *conducive* to irreparable mistaken identification. *State v. LeBlanc*, Me., 290 A.2d 193 (1972); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

■ Nevertheless, a review of the record makes clear that the faulty procedure used did not create a *substantial likelihood* of misidentification. *State v. Boucher, supra.* The factors to be weighed in evaluating the *reliability* of the identification include the opportunity of the victim to view his assailant at the time of the crime, the victim's degree of attention, the accuracy of the victim's description of the assailant, the victim's degree of certainty in making his identification and the amount of time between the crime and the identification. *State v. St. Onge, supra; Neil v. Biggers, supra.*

The assault occurred on a Bangor street in broad daylight. The victim and his assailant struggled for approximately five minutes. Although the victim was grabbed from behind, he testified that he did have an opportunity to get *"quite a glance of him."* The day after the assault Carney again saw his assailant walking on the street past his home. Carney stated that he recognized the man because he was wearing the same clothes and because of *"his general familiar face."* Carney's testimony makes clear that he was completely satisfied in his own mind that it was the same individual who had attempted to rob him the day before.

Although a physical description of the defendant is not available in the record, the defendant does not claim that the description given the police on June 13, 1978, was in any way inapplicable. The accuracy of the description given the police is supported by the fact that the officer was able to pick out a photograph of the defendant that was later positively identified by Carney. *See Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

The contested photographic identification was made only two days after the crime, and only one day after the assailant walked past Carney's home. The record indicates that Carney made a sincere effort to be accurate when he selected defendant's picture. He carefully looked over all of the photographs in the array for a minute or two, then, as he described it, *"I went over once and the first picture, I—I could recognize very definite, I says, That's ___ that's the one."* Carney testified further, *"[O]f course, I, in the meantime, I had seen him across the street, and so I knew definitely I had seen him then, so I knew definitely . . . who he was."*

Our conclusion that the out-of-court identification was reliable, and therefore consistent with constitutional requirements, despite utilization of suggestive identification procedures is supported by the ruling of the trial Justice that, from all of the circumstances, the victim's in-court identification of the defendant was based upon an independent source.

Because we find that testimony concerning the out-of-court identification was properly admitted into evidence at trial, we need not address defendant's claim that the in-court identification was tainted by unduly suggestive out-of-court identification procedures. Because the photographic identification offended no constitutional requirement, its effect on the in-court identification requires no further inquiry. *State v. St. Onge, supra.*

■ Defendant argues finally that the trial court abused its discretion in admitting a color photograph of the victim into evidence. The picture, taken five days after the attempted robbery, depicts a partially healed contusion on Carney's forehead. The photograph has probative value because it corroborates Carney's description of the assault. *See State v. Boucher, supra.*

It can hardly be called *"gruesome"* within the meaning of *State v. Conwell*, Me., 392 A.2d 542 (1978). We are satisfied that the trial Justice did not abuse his discretion by allowing the picture to be admitted into evidence.

The entry is:

Appeal denied.

Judgment affirmed.