**STATE of Maine**

v.

**Harold Orlean PRENTISS III.**

Supreme Judicial Court of Maine.

Argued March 13, 1989.

Decided April 14, 1989.

Janet T. Mills (orally), Dist. Atty., Auburn, for the State.

Paul F. Macri (orally), Thomas J. Valvano, Berman, Simmons & Goldberg, Lewiston, for defendant.

Before McKUSICK, C.J., and
ROBERTS, WATHEN, GLASSMAN,
CLIFFORD and COLLINS, JJ.

ROBERTS, Justice.

Harold Prentiss appeals from judgments of conviction for burglary, 17–A M.R.S.A. § 401 (1983 & Supp.1988), and gross sexual misconduct, 17–A M.R.S.A. § 253 (Supp. 1988), entered in the Superior Court, (Androscoggin County, *Delahanty, II, J.*), following a jury trial. Prentiss challenges as obvious error the use of a photo line-up; contends that rulings on examination of a witness and contamination of a juror are erroneous; and argues that the evidence is insufficient and that the imposition of consecutive sentences is unlawful. We affirm the judgment but vacate the consecutive sentence.

### I.

Shortly after midnight in November, 1982, a woman was awakened by a man in her bedroom. After determining that her children in the apartment were asleep, he forced the woman onto her bed, pulled off her underpants, attempted to rape her and performed oral sex on her. After 10 to 15 minutes the woman escaped her attacker and ran in her nightgown to a neighboring apartment.

The next day Officer Mahon showed the victim an array of seven photographs. She picked out a picture of Prentiss and identified him at trial as her assailant. She did not recall seeing a tattoo in the form of two teardrops on the defendant's face. Of three other residents of the apartment complex who had seen a strange man in the vicinity, one identified a picture of the defendant and identified Prentiss at trial. The *other* two residents testified that Prentiss looked like the man, but they could not positively identify him. Other evidence placed Prentiss in the vicinity of the apartment complex on the night of the incident, in possession of a knife similar to one found in the victim's bedroom. Scientific evidence from the scene was inconclusive.

### II.

■ Prentiss claims that the photo identification was unduly suggestive. Various witnesses described an array of seven color photographs, including a picture of Prentiss, from which they identified Prentiss. Because defense counsel did not object to the testimony or admission of the photographs, we review for obvious error. M.R. Crim.P. 52(b). The due process clause of the Fourteenth Amendment to the United States Constitution prevents use of evidence derived from unduly suggestive out-of-court identification procedures conducive to an irreparable mistaken identification. *State v. Philbrick*, 551 A.2d 847, 849 (Me. 1988). Although the trial court made no findings concerning the identification procedure, the pictures in the array are not substantially dissimilar to that of Prentiss. Each of the men pictured had a beard and long hair and one besides Prentiss had gray in his beard. Despite some factual similarity between this case and *State v. Doughty*, 408 A.2d 683 (Me.1979), the defendant's reliance on that case is misplaced because the defendant in *Doughty* preserved the issue by pretrial motion and objection at trial. In the case at bar, we conclude that the array is not so suggestive that its use constituted obvious error, depriving Prentiss of a fair trial.

■ Prentiss argues next that the court erred by limiting his questioning of a witness. During cross-examination of Officer Mahon, who showed the photo lineup to the victim, defense counsel asked, "In your opinion you did not consider her identification to be a positive photo identification, correct?" A short time later, defense counsel asked, "And when she picked out this photograph, based on your observations of her you did not consider it to be a positive identification, correct?" The court sustained the State's objection on ground of relevancy to both questions. We agree

with the State's contention that the officer's opinion of what the victim thought was irrelevant. The court's exclusion of both questions is not error.

 Prentiss challenges the trial court's decision not to excuse a juror who overheard a news reporter state he felt the delay between the incident and the trial was caused by the defendant's escape prior to trial. Upon inquiry by the court, the juror stated that she would be able to disregard that information and would base her verdict only upon the evidence at trial. The court's finding that the juror's judgment would not be affected by the information was not clearly erroneous. Accordingly, the decision to retain the juror who was exposed to potentially prejudicial information was within the court's discretion. *State v. Libby*, 435 A.2d 1075, 1079 (Me. 1981); *see also, State v. Cormier*, 535 A.2d 913, 915–16 (Me.1987) (deference given to trial court evaluation of juror's response to the court's queries).

 We also reject the defendant's contention that the evidence was insufficient to support his convictions. Our review of the record in the light most favorable to the prosecution reveals that the jury rationally could have found every element of burglary and gross sexual misconduct beyond a reasonable doubt. *State v. Barry*, 495 A.2d 825, 826 (Me.1985).

### III.

 We agree with the defendant's final argument that imposition of consecutive sentences of 20 years for gross sexual misconduct and 10 years for burglary was unlawful because the burglary was committed only to facilitate the gross sexual misconduct. At the sentencing hearing,

the court stated, "It's clear the burglary was to facilitate his actions when he got in there." The court also determined that the seriousness of the conduct involved in this single criminal episode combined with the seriousness of the defendant's criminal record required a sentence in excess of the maximum available for gross sexual misconduct.

17-A M.R.S.A. § 1256 (1983 & Supp. 1988) governs the imposition of multiple sentences of imprisonment.[1] The trial court reasoned that although the pertinent sections of this statute, sections (2)(D) and (3)(B), appeared to be in conflict, section (2)(D) permitted imposition of consecutive sentences in this case. We find no such conflict. Section 2 outlines the preference for concurrent sentences. Section 3 describes the circumstances in which consecutive sentences are prohibited. *See State v. Bunker*, 436 A.2d 413, 418 (Me.1981). The case before us is sufficiently analogous to *Bunker* to be controlled by our decision in that case. Count Two of the indictment accuses Prentiss of unlawfully entering with the intent to commit the specific offense charged in Count One. Moreover, the court found that the burglary was committed to facilitate the gross sexual misconduct and the record contains no evidence to the contrary. We conclude, therefore, that the part of the judgment ordering that the sentences be served consecutively must be stricken.

The entry is: Judgment modified to strike order that sentences be served consecutively, and, as modified, affirmed.

All concurring.

---

1. That statute provides in pertinent part:

§ 1256. **Multiple sentences of imprisonment**

....

2. ... The sentences shall be concurrent unless, in considering the following factors, the court decides to impose sentences consecutively:

....

D. That the seriousness of the criminal conduct involved in either a single criminal episode or in multiple criminal episodes or the seriousness of the criminal record of the con-

victed person, or both, require a sentence of imprisonment in excess of the maximum available for the most serious offense.

3. A defendant may not be sentenced to consecutive terms for crimes arising out of the same criminal episode when:

....

B. One crime consists only of a conspiracy, attempt, solicitation or other form of preparation to commit, or facilitation of, the other....