STATE OF MAINE
KENNEBEC, ss.

UNIFIED CRIMINALCOURT
LOCATION: AUGUSTA
DOCKET NO.: CR-2016-161

STATE OF MAINE                    )
                                  )
v.                                )          ORDER ON MOTION
                                  )          TO SUPPRESS
                                  )
MICHAEL HEIN,                     )
          Defendant               )

This matter comes before the Court on the Defendant's Motion to Suppress filed on August 4, 2016. A hearing was held on the Motion on September 22, 2016. The State was represented by Deputy District Attorney Paul Cavanaugh, Esq. and the Defendant was represented by Scott Hess, Esq. Both parties were fully heard.

The Defendant is charged with one count of Cruelty to Animals, a Class D criminal offense under 17 M.R.S. § 1031(1)(D). The charge stems from alleged conduct by the Defendant while he was jogging on the Kennebec River Rail Trail in Augusta on November 23, 2015. In his Motion, the Defendant originally moved to suppress (1) complainant's pretrial identification of the Defendant from a photographic lineup and (2) a video of the Defendant running at a local gym. In addition, the Defendant argued that complainant should be precluded from identifying the Defendant at trial because the pretrial identification process has tainted her ability to do so independently. Subsequently, at the time of the hearing on the Motion, the Defendant indicated that the video was no longer at issue and he would not be pursuing it as part of his Motion. However, the Defendant clarified that there are still two questions before the Court: (1) is the photo lineup admissible at trial and (2) should an in-court identification of the Defendant by complainant at trial be excluded because the pretrial identification so tainted her as a witness that she is unable to render an independent identification.

1

During the hearing on the Motion, the Court heard testimony from complainant, AmyLou Craig, as well as Animal Control Officer Francois Roodman and Officer David Adams, both of the Augusta Police Department. The State and the Defendant each presented multiple exhibits that were entered into evidence, and the Court heard closing arguments from both sides. The Court also gave the parties the opportunity to submit additional written argument to the Court, which they did not ultimately avail themselves of.

## I. Findings of Fact

On November 23, 2015, Ms. Craig was walking her dog, Brewer, on a leash, along the Kennebec River Rail Trail in Augusta. She was walking in the direction of Hallowell. At approximately 3:00 p.m., Ms. Craig encountered a man who was jogging in the opposite direction from her on the Trail. She observed the man jogging toward her "for at least 30 seconds" and initially at "quite a distance." The man was wearing a winter hat, but the hat was of a design such that it still revealed that the man had "short, faded hair." Except for the man jogging toward her, Ms. Craig was alone on the Trail at that time and she was aware of his approach. Eventually, the man stopped when he reached Ms. Craig and exchanged words with her, and then he kicked Brewer forcefully. After the man kicked Brewer, Ms. Craig knelt down to comfort the dog, which was a puppy at the time, and while doing so she "looked up at" the man and exchanged more words with him, during which the man smiled at her, and afterward he jogged away. At that time, Ms. Craig did not know who the man was, although he did "look familiar" and "distinctive" to her. Ms. Craig, described the weather at the time of the incident as "a nice day."

Soon after the incident on the Trail and on the same day, Ms. Craig spoke to Augusta

2

Police Department Officer David Adams about what had happened. She also submitted a written statement. Then she posted on her Facebook page about the incident. Her post included a description of the man who kicked Brewer on the Trail. Her post said the man was "about 6" [sic], 40 years old, dressed in running shorts, navy and grey sweatshirt, and a winter hat." In response to Ms. Craig's post, as well as her subsequent discussions about the incident at her place of work (College Carry-Out restaurant in Augusta, where she has frequent, in-person contact with a large number of customers), two people told her that the man could be "Mike Hein" because of similar experiences they had with him on the Trail in the past. Ms. Craig searched for Mr. Hein, the Defendant in this case, on Facebook, she found his profile and reviewed at least eight pictures of him, "instantly" recognizing the Defendant as the man who kicked Brewer. Some of the Facebook photos she saw "looked exactly like" the Defendant, although others did not because the Defendant's weight and hair length were different. At approximately the time that Ms. Craig was looking into the Defendant's Facebook account, people sent her the names and photos of four to six other men they said could have been the man who kicked Brewer, but Ms. Craig did not recognize any of them.

In the days that followed the incident, Officer Adams and Ms. Craig communicated about the case and she told him that she suspected the Defendant. She showed Officer Adams, on her cellular phone, photos of the Defendant from his Facebook page, but she did not provide him with any copies. The photos were a diverse collection and included the Defendant in a variety of settings and clothing, including in a sweatshirt and ball cap, in a suit and tie, and in athletic gear. Ms. Craig also provided Officer Adams with the names of the two people who initially gave her the Defendant's name in response to her Facebook post, and Officer Adams followed up with them as part of his investigation. In addition to Officer Adams, Ms. Craig spoke with Augusta

3

Police Department Animal Control Officer Francois Roodman. Ms. Craig was asked to write a second statement and she did so on November 27, 2015. In her statement, she wrote: "I looked him (Mike Hein) up on Facebook, and he does look like the man I met on the trail, other than his length of hair in profile picture." When she submitted the second statement, Officer Roodman was present and Ms. Craig showed him Facebook photos of the Defendant on her cellular phone, as she had done previously with Officer Adams. While this police investigation was taking place, the incident itself was receiving significant attention in the local press, and Ms. Craig was interviewed about it on multiple occasions.

At another point during this time frame, Officer Adams investigated the possibility that a different man could have been the man who kicked Brewer. To this end, Officer Adams showed a single picture of the second man to Ms. Craig, but Ms. Craig said that the photo of the second man did not match her recollection of the man she encountered. A commenter on Ms. Craig's original Facebook post was the person who suggested that it could have been the second man, and Ms. Craig was not involved in suggesting the second man as a suspect in any way.

On December 3, 2015, Officers Roodman and Adams presented a photo lineup to Ms. Craig while she was at work, telling her to "be honest" and take her time, in addition to other standard instructions. The lineup was prepared by Officer Roodman under the guidance of Bureau of Criminal Investigations Lieutenant Chris Massey, and it contained six photos of men. Officer Roodman had searched the Augusta Police IMC electronic database for photos to use in the lineup, but he could not recall the search terms he used. The Defendant's photo was pre-existing in IMC, being uploaded in 2013. Ms. Craig identified the Defendant saying the photo of him "looks exactly like the guy" she "encountered that day." The photo of the Defendant from the lineup was not on the Defendant's Facebook page, but the lineup photo does appear among

4

the many results from an online Google image search of the Defendant's name. The source of the Google image is an online news article written about the Defendant by the Bangor Daily News. The Bangor Daily News article was a story involving the Defendant as an Augusta political figure. Ms. Craig does not keep up with politics and only learned that the Defendant was politically active after she recognized him on Facebook. She recognized him from his Facebook photos only, and she was unsure if she had searched for him on Google and viewed pictures of him there. Ms. Craig stated that she had also served the Defendant at College Carry-Out years earlier.

Subsequently, Defendant was charged with Animal Cruelty and this Motion followed.

II. Discussion

a. Ms. Craig's Preliminary Research

As a threshold matter, the Court does not find that Ms. Craig's independent, pre-photo lineup research into the identity of the Defendant poses a problem in this case. This is an issue that was discussed by the parties during the hearing on the Motion. The Court does not believe that it is a problem because, according to United States Supreme Court precedent, due process applies only to "improper police arrangement of the circumstances surrounding an identification." *Perry v. New Hampshire*, 565 U.S. 228, 242 (2012). "[W]hat triggers due process concerns is police use of an unnecessarily suggestive identification procedure, whether or not they intended the arranged procedure to be suggestive." *Id.* at 232 n.1. In other words, due process does not apply to Ms. Craig's personal, independent research into the identity of the Defendant on Facebook. To be clear, under *Perry*, even suggestive circumstances surrounding a witness's identification do not implicate the due process clause if the identification procedure

5

was not arranged by law enforcement. *Id.* at 232. This is consistent with the Maine Law Court's decision in *State v. Reeves*, 499 A.2d 130, 136-137 (Me. 1985), holding that spontaneous showups or chance encounters not arranged by the police do not violate a defendant's right to due process.

b. The Photo Lineup

The primary issue before the Court is whether Ms. Craig's pretrial identification of the Defendant in the photo lineup may be offered into evidence at trial. The lineup was prepared by Officer Roodman under the guidance of a more experienced law enforcement officer. It contained six photos, including one of the Defendant, whom Ms. Craig identified.

"The due process clause of the United States Constitution has been held to protect a criminal defendant from the use against him at trial of an out-of-court identification that is 'conducive to an irreparable mistaken identification,'" *State v. True*, 464 A.2d 946, 949 (Me. 1983) (citing *Stovall v. Denno*, 388 U.S. 293, 302 (1967)), "or 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *True*, 464 A.2d at 949-950 (citing *Simmons v. United States*, 390 U.S. 377, 384 (1968)). "The ultimate concern is the reliability of the out-of-court identification; reliability is the linchpin in determining the admissibility of identification testimony." *True*, 464 A.2d at 950 (internal quotation marks omitted).

"A two-part test is used to determine the admissibility of an out-of-court identification under this standard." *Id.* The "first requires the trial judge to determine whether the identification procedure used by law enforcement personel [sic] was suggestive. The defendant has the burden of proof at this stage. He must demonstrate by a preponderance of the evidence that the identification procedure tended to increase the likelihood of misidentification." (internal

6

citations and quotation marks omitted). *Id.* "[I]f the procedure used was not inherently suggestive, its results are admissible at trial." *Id.*

On the other hand, if "the defendant's initial burden is met and the identification procedure is shown to be unnecessarily suggestive, the results of the confrontation may still be admitted against a defendant at trial, if under the totality of the circumstances the identification was reliable even though the confrontation was suggestive." *Id.* (internal quotation marks omitted). "The totality of the circumstances to be considered in evaluating the likelihood of misidentification includes: the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* (internal quotation marks omitted). "This is the second part of the test," and at this stage, "the State has the burden of proving by clear and convincing evidence that the identification, nevertheless, is reliable, although the procedure used was suggestive." *Id.* (internal quotation marks omitted).

There are additional standards for photo lineups that are relevant here. The suspect should not be "presented in a distinctive manner that sets him apart markedly from all the other participants." *State v. Doughty*, 408 A.2d 683, 686 (Me. 1979). No group of photos should be arranged in such a way that the photo of a single person is in some way emphasized. *See Simmons v. United States*, 390 U.S. 377, 383 (1968).

Here, the Court finds that the Defendant has not satisfied his burden of showing, by a preponderance of the evidence, that the photo lineup was suggestive because it tended to increase the likelihood of misidentification. The Defendant argues that the photo lineup is suggestive because in his photo he is wearing a tie; his photo is slightly larger than the others; he is

7

positioned askew from the camera; and he has a lighter-colored background. However, two other men in the lineup are also wearing ties and the photos are cropped at approximately the same level on the chest. Although it is true that the Defendant's picture is larger than the others, the difference is limited to its width and the variation is virtually imperceptible. The Defendant's head position in the photo is likewise minimally different, but another one of the men in the lineup has his head tilted to one-side, achieving a similar effect. Last, that the Defendant's background is lighter than the others is not suggestive because the Defendant's background is not uniformly white and none of the others are uniformly gray; there is a spectrum of background colors across the lineup and within individual photos. In any event, the law does not prohibit mere differences between photos, the law prohibits marked differences, and the Court does not find that one exists here such that the Defendant's photo is emphasized. In fact, all six of the men in the lineup appear to be of the same general age, weight, hair color, hairstyle, race, and skin color. Further, the Court is not persuaded by the Defendant's argument that the lineup was suggestive because the Defendant was wearing a suit in the lineup, and a portion (but not all) of the Defendant's Facebook photos that Ms. Craig viewed previously also featured the Defendant in a suit. This goes to the preliminary research issue that was dealt with at the outset of this section. (Also see *United States v. Brennick*, 405 F.3d 96 (2005) for the 1st Circuit's decision upholding of a photo lineup under almost identical circumstances.)

The Defendant is correct in his argument that the single-photo lineup, performed by Officer Adams, regarding the second man was suggestive. *See State v. Nigro*, 2011 ME 81, ¶ 22, 24 A.3d 1283. However, because the Defendant was not involved in that lineup, it has no bearing on the resolution of this case.

The Court notes that even if the photo lineup was somehow suggestive, it would still be

admitted under the totality of the circumstances test in which the State has the burden of proving, by clear and convincing evidence, that the identification is still reliable. Ms. Craig had a close and sustained view of Defendant's face during the incident on the Trail; she was alert to him because she was otherwise alone on the Trail; her initial description of the man was reasonably accurate; Ms. Craig displayed a high-level of certainty about her identification; and the time between the incident and the lineup was a relatively brief period of 10 days. The Court is also not persuaded by the Defendant's unsupported argument that Ms. Craig felt pressure to resolve this high-profile case, and therefore made an unreliable identification.

c. Ms. Craig's In-Court Identification of Defendant

In light of the Court's decision that the photo lineup was not suggestive, Ms. Craig will be permitted, if she can, to identify the Defendant in court during a trial on this matter.

III. Conclusion

For all of the foregoing reasons, the Defendant's Motion to Suppress is **DENIED**. The Clerk is directed to incorporate this Order on the docket of the case pursuant to Me. R. Civ. P. 79(a).

Dated: January 17, 2017

Judge Eric J. Walker,
Maine District Court

9

STATE OF MAINE
KENNEBEC, ss.

UNIFIED CRIMINAL COURT
LOCATION: AUGUSTA
DOCKET NO.: CR-2016-161

STATE OF MAINE        )
                      )
v.                    )
                      )
MICHAEL HEIN,         )
        Defendant     )

ORDER ON MOTION
FOR DISCOVERY

This matter comes before the Court on the Defendant's Motion for Discovery filed on August 4, 2016. A hearing was held on the Motion on September 22, 2016. The State was represented by Deputy District Attorney Paul Cavanaugh, Esq. and the Defendant was represented by Scott Hess, Esq. Both parties were fully heard.

The Defendant is charged with one count of Cruelty to Animals, a Class D criminal offense under 17 M.R.S. § 1031(1)(D). The charge stems from alleged conduct by the Defendant while he was jogging on the Kennebec River Rail Trail in Augusta on November 23, 2015. In his Motion, the Defendant seeks the prosecution's reports in the matter of State of Maine v. David Ladd, an incident where Mr. Ladd apparently kicked another person, in an unprovoked manner, on the Rail Trail on September 13, 2015. Mr. Ladd later pled guilty to this Assault charge. After this motion was argued, both parties presented the Court with written legal arguments and the State provided the police reports and discovery from the David Ladd case for an *in camera* inspection by the Court. The State did not provide the Court with the victim's medical records and other confidential materials and this is understandable.

The Court, however, does agree with the Defendant that because of the similarity of the attacks, the State should provide the Defendant information about this possible alternative suspect. Accordingly, the sixteen pages of discovery that the State provided the Court shall be

1

provided to the Defendant so he can use it in the defense of his case- if he so choses. The State is directed to provide this discovery to the Defendant as soon as possible.

For all of the foregoing reasons, the Defendant's Motion for Discovery is **GRANTED**. The Clerk is directed to incorporate this Order on the docket of the case pursuant to Me. R. Civ. P. 79(a).

Dated: January 17, 2017

Judge Eric J. Walker,
Maine District Court

2

CRIMINAL DOCKET
KENNEBEC, ss.
Docket No   KENCD-CR-2016-00161

**DOCKET RECORD**

DOB: 03/25/1970
Attorney: SCOTT HESS                          State's Attorney: KATE MARSHALL
          THE LAW OFFICE OF SCOTT F HESS LLC
          72 WINTHROP STREET
          AUGUSTA ME 04330
          RETAINED 02/08/2016

Filing Document: CRIMINAL COMPLAINT           Major Case Type: MISDEMEANOR (CLASS D,E)
Filing Date: 01/08/2016

## Charge(s)

1   CRUELTY TO ANIMALS                        11/23/2015 AUGUSTA
Seq 7923  17    1031(1)(D)          Class D

## Docket Events:

01/22/2016 FILING DOCUMENT -  CRIMINAL COMPLAINT FILED ON 01/08/2016

01/22/2016 Charge(s): 1
           HEARING -  ARRAIGNMENT SCHEDULE OTHER COURT ON 02/22/2016 at 08:30 a.m. in Room No.  1

           AUGSC
02/09/2016 Party(s):  MICHAEL G HEIN
           ATTORNEY -  RETAINED ENTERED ON 02/08/2016

           Attorney: SCOTT HESS
02/22/2016 Charge(s): 1
           HEARING -  ARRAIGNMENT WAIVED ON 02/22/2016

02/22/2016 Charge(s): 1
           PLEA -  NOT GUILTY ENTERED BY COUNSEL ON 02/22/2016

           Attorney: SCOTT HESS
02/22/2016 Charge(s): 1
           HEARING -  DISPOSITIONAL CONFERENCE SCHEDULED FOR 05/17/2016 at 10:00 a.m. in Room No.  1

02/22/2016 Charge(s): 1
           HEARING -  DISPOSITIONAL CONFERENCE NOTICE SENT ON 02/22/2016

05/09/2016 MOTION -  MOTION TO CONTINUE FILED BY DEFENDANT ON 05/09/2016

05/13/2016 MOTION -  MOTION TO CONTINUE GRANTED ON 05/11/2016
           TOM  NALE , JUDGE
           COPY TO PARTIES/COUNSEL
05/13/2016 Charge(s): 1
           HEARING -  DISPOSITIONAL CONFERENCE CONTINUED ON 05/11/2016

05/13/2016 HEARING - DISPOSITIONAL CONFERENCE SCHEDULED FOR 07/19/2016 at 10:00 a.m. in Room No. 1

05/13/2016 HEARING - DISPOSITIONAL CONFERENCE NOTICE SENT ON 05/13/2016

07/18/2016 Charge(s): 1
         MOTION - MOTION TO CONTINUE FILED BY DEFENDANT ON 07/18/2016

07/18/2016 Charge(s): 1
         MOTION - MOTION TO CONTINUE GRANTED ON 07/18/2016
         TOM NALE , JUDGE
         COPY TO PARTIES/COUNSEL
07/18/2016 HEARING - DISPOSITIONAL CONFERENCE CONTINUED ON 07/18/2016

07/19/2016 Charge(s): 1
         HEARING - DISPOSITIONAL CONFERENCE SCHEDULED FOR 08/02/2016 at 10:00 a.m. in Room No. 1

07/19/2016 Charge(s): 1
         HEARING - DISPOSITIONAL CONFERENCE NOTICE SENT ON 07/19/2016

08/02/2016 Charge(s): 1
         HEARING - DISPOSITIONAL CONFERENCE HELD ON 08/02/2016
         DONALD H MARDEN , JUSTICE
         Defendant Present in Court
08/04/2016 MOTION - MOTION TO SUPPRESS FILED BY DEFENDANT ON 08/04/2016

08/04/2016 MOTION - MOTION FOR DISCOVERY FILED BY DEFENDANT ON 08/04/2016

08/04/2016 MOTION - MOTION TO DISMISS FILED BY DEFENDANT ON 08/04/2016

08/04/2016 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 09/22/2016 at 09:00 a.m. in Room No. 1

         NOTICE TO PARTIES/COUNSEL
08/04/2016 HEARING - MOTION TO SUPPRESS NOTICE SENT ON 08/04/2016

08/04/2016 HEARING - MOTION FOR DISCOVERY SCHEDULED FOR 09/22/2016 at 09:00 a.m. in Room No. 1

         NOTICE TO PARTIES/COUNSEL
08/04/2016 HEARING - MOTION FOR DISCOVERY NOTICE SENT ON 08/04/2016

08/04/2016 HEARING - MOTION TO DISMISS SCHEDULED FOR 09/22/2016 at 09:00 a.m. in Room No. 1

         NOTICE TO PARTIES/COUNSEL
08/04/2016 HEARING - MOTION TO DISMISS NOTICE SENT ON 08/04/2016

09/22/2016 HEARING - MOTION TO DISMISS HELD ON 09/22/2016
         ERIC WALKER , JUDGE
09/22/2016 HEARING - MOTION FOR DISCOVERY HELD ON 09/22/2016
         ERIC WALKER , JUDGE
09/22/2016 HEARING - MOTION TO SUPPRESS HELD ON 09/22/2016
         ERIC WALKER , JUDGE
09/22/2016 MOTION - MOTION TO DISMISS DENIED ON 09/22/2016
         ERIC WALKER , JUDGE
         COPY TO PARTIES/COUNSEL

CAN BE READDRESSED AT TRIAL
09/22/2016 MOTION -  MOTION FOR DISCOVERY GRANTED ON 09/22/2016
         ERIC  WALKER , JUDGE
         COPY TO PARTIES/COUNSEL


                                    IN PART ATTY TO FILE ORDER WITHIN 7 DAYS
                         1/17/17-ORDER, WALKER, J.  MOTION GRANTED
09/22/2016 MOTION -  MOTION TO SUPPRESS UNDER ADVISEMENT ON 09/22/2016


09/22/2016 CASE STATUS -  CASE FILE LOCATION ON 09/22/2016
         ERIC  WALKER , JUDGE
         WITH JUDGE WALKER AWAIT AN ORDER
09/30/2016 Charge(s): 1
         OTHER FILING -  OTHER DOCUMENT FILED ON 09/29/2016


         STATE'S RESPONSE TO DEFENDANT'S DISCOVERY MOTION
10/06/2016 OTHER FILING -  OTHER DOCUMENT FILED ON 10/03/2016


         LETTER INDICATING THE DEFENSE WILL BE RESTING ON CASE LAW AND ARGUMENTS.
10/14/2016 OTHER FILING -  OTHER DOCUMENT FILED ON 10/14/2016


         STATE'S RESP TO DEF'S MOTION FOR DISCOVERY. SCANNED TO J WALKER 10/14/16
11/29/2016 OTHER FILING -  OTHER DOCUMENT FILED ON 11/28/2016


         Attorney:  SCOTT HESS
         NOTICE OF CHANGE OF ADDRESS
12/19/2016 LETTER -  FROM PARTY FILED ON 12/19/2016


         Attorney:  SCOTT HESS
         LETTER FROM SCOTT HESS REQUESTING UPDATE FROM THE COURT ON PENDING MOTIONS (UNDER
         ADVISEMENT) JUDGE WALKER
12/19/2016 OTHER FILING -  TRANSCRIPT FILED ON 12/19/2016


         MOTIONS HEARING HELD ON 9/22/16
01/17/2017 CASE STATUS -  CASE FILE RETURNED ON 01/17/2017

01/17/2017 MOTION -  MOTION TO SUPPRESS DENIED ON 01/17/2017
         ERIC  WALKER , JUDGE
         COPY TO PARTIES/COUNSEL
01/17/2017 ORDER -  COURT ORDER ENTERED ON 01/17/2017
         ERIC  WALKER , JUDGE
         ORDER ON MOTION TO SUPPRESS                            MOTION TO
         SUPPRESS IS DENIED                            COPY TO ATTY HESS, DDA
         CAVANAUGH, REPOSITORIES
01/17/2017 ORDER -  COURT ORDER ENTERED ON 01/17/2017
         ERIC  WALKER , JUDGE
         ORDER ON MOTION FOR DISCOVERY                         DEFT'S MOTIO
         FOR DISCOVERY IS GRANTED                      COPY TO ATTY HESS, DDA
         CAVANAUGH, REPOSITORIES

A TRUE COPY
ATTEST: _____
Clerk